467 So.2d 948 (1985)
Mona Marie Chatelain CHURCHILL
v.
Forrest William CHURCHILL.
No. 54759.
Supreme Court of Mississippi.
April 24, 1985.
*949 Paul G. Swartzfager, Sr., Laurel, for appellant.
Tommy Dulin, Dulin & Dulin, Gulfport, for appellee.
Before ROY NOBLE LEE, P.J., HAWKINS and PRATHER, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Mona Marie Chatelain Churchill appeals from a decree of the Chancery Court of Harrison County granting Forrest William Churchill a divorce upon his cross-bill, and denying her claim for separate maintenance. Churchill cross-appeals on questions of evidence, alimony and custody of children.
On December 15, 1980, the parties entered into a separation and support agreement. Two children, Forrest Mynelle Churchill, age 4, and Curt Lewis Churchill, age 3, had been born of the marriage. Appellee agreed to pay appellant the sum of $500.00 per month for support of wife and children. The agreement provided that it would be rendered null and void in the event "either husband or wife initiates court action with a view toward terminating the marriage relation."
*950 At the time of their marriage, both the parties were members of the U.S. Navy. At the time the agreement was executed, appellee was still serving in the Navy. Appellant filed her suit for separate maintenance and support of children on August 18, 1982. Appellee filed an answer and cross-bill for divorce on September 17, 1982. Appellee paid $500.00 per month to his wife until June, 1982, when he reduced the payment to $300.00 per month.

I.

THE COURT ERRED IN GRANTING A DIVORCE TO APPELLEE, WHICH WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
The record shows generally that while the parties were living together in Puerto Rico, where appellee was assigned to Naval duty, they had periodic fights, the Naval authorities were called in, appellee usually was removed from the home and both were advised by Naval legal officers. Appellee is the only witness who testified in support of his complaint for divorce on the ground of habitual cruel and inhuman treatment. His testimony was general, not specific, and follows:
Q. She has accused you of habitual cruel and inhuman treatment and said that the reasons for that was that you argued with her and that you were guilty of drunkenness and you were guilty of physical abuse. How do you respond to those allegations?
A. I would have to say there is just about no truth whatsoever. If there was any physical abuse, it was in my attempt to try to get away from her to avoid a fight by just trying to leave the area, which is my normal manner; I will just walk away and won't discuss it if it is getting too hot and she will jump right on you and won't allow you to get away.
THE COURT: She physically attacked you?
A. Yes, sir, on numerous occasions while I was trying to leave the quarters.
* * * * * *
THE COURT: Are you telling the Court that your living with that lady in Puerto Rico was of such nature that it affected your job  her actions affected you doing your job and your duty?
A. Absolutely, sir. On several occasions the security force on the base had to come to our quarters for what they called family disturbances, loud arguing, and complaints were made due to this and security would come and I was, on more than one occasion  they always take the man and ask him to leave the quarters and the woman and the kids always stay in the quarters and I have been asked to leave on more than one occasion, go to the barracks for a period of time and these comments and derrogatory [sic] comments on this or comments about this would be put into my evaluation, which is part of my grades towards making another stripe.
THE COURT: Did both of you use alcohol down there?
A. I very very seldom drank in Puerto Rico, sir.
THE COURT: Did your wife use alcohol?
A. No, sir.
In February, 1981, appellee wrote a letter to appellant in which he stated the following: "I blame myself for the problems but I know inside that I really don't intend to change and when someone tells me I'm wrong I just get mad... ."
In Gallaspy v. Gallaspy, 459 So.2d 283 (Miss. 1984), we said:
In order to justify a divorce on the ground of habitual cruel and inhuman treatment, such treatment must be so continuous and of such a nature that the offended spouse can no longer live with the other spouse on account of that treatment and, therefore, separates herself from such spouse. The facts of the case sub judice simply do not pass the test of habitual cruel and inhuman treatment. Under the facts, appellee could have waited for a period of one year, filed suit for divorce on the ground of wilful, continued and obstinate desertion for the period of one year, and, without question, *951 she would have been entitled to a divorce from the appellant.
If habitual cruel and inhuman treatment is to remain the seventh ground for divorce under the divorce statutes of Mississippi, then when a complaint is filed charging that ground for divorce, the proof must sustain it. Otherwise, the ground should be repealed by the legislature, but not by the judiciary. We recognize that courts have become liberal in the application of proof on the habitual cruel and inhuman treatment ground. However, by no means have they made a farce and mockery of the requirement to prove the ground.
* * * * * *
The case of Marble v. Marble, 457 So.2d 1342 (Miss. 1984), involves a divorce on the ground of habitual cruel and inhuman treatment with facts similar to those in the present case. There, the lower court declined to grant a divorce on that ground, and we said:
While the record indicates it is now impossible for John to resume cohabitation with Rebecca, we are of the opinion her behavior does not constitute "habitual cruel and inhuman treatment" as this Court has defined. [Citing Burnett v. Burnett, supra].
459 So.2d at 285, 286.
In Wires v. Wires, 297 So.2d 900, 902 (Miss. 1974), the Court said:
We agree, however, that the charge of cruel and inhuman treatment against one spouse means something more than unkindness or rudeness or mere incompatibility or want of affection. It has been said that:
"The conduct of the offending spouse must be so unkind as to be cruel, that is, so unreasonably harsh and severe as to be inhumane, so lacking in human qualities, so unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb, or health. And finally, such conduct must be habitual, that is, done so often, or continued so long, that its recurrence may be reasonably expected whenever occasion or opportunity presents itself." Bunkley and Morse, Amis on Divorce and Separation in Mississippi § 3.14(3), at 114 (1957); cited in Burnett v. Burnett, 271 So.2d 90, at 92 (Miss. 1972).
The case sub judice is another of those cases which involves irreconcilable differences and the parties probably will never be able to live together in harmony. However, we are of the opinion that the facts do not make out a case for divorce on the ground of habitual cruel and inhuman treatment and that the lower court was manifestly wrong in granting appellee a divorce.

II.

THE COURT ERRED IN NOT GRANTING APPELLANT SEPARATE SUPPORT AND MAINTENANCE.
A requisite for entitlement to separate maintenance on the part of the wife is that she be without fault. Willful abandonment or abuse of the wife and refusal to support her may invoke the power of the chancery court to require the husband to maintain her separately. Although it is not necessary for the wife to be blameless, her misconduct, which contributes to the separation must be less than that of her husband. Rodgers v. Rodgers, 349 So.2d 540 (Miss. 1977). In Rodgers, the Court stated that the separation there was caused by the fault of both parties. A constant and continuing argument and battle existed between them and the wife was not entitled to separate maintenance.
In the case sub judice, the lower court held that both parties were at fault and the record indicates that they were about equally to blame. Therefore, we cannot say the lower court was manifestly wrong in refusing to grant separate maintenance to appellant.

III.

THE COURT ERRED IN DECLINING TO ENFORCE THE AGREEMENT OF $500.00 PER MONTH SUPPORT.
As mentioned hereinabove, the separation agreement of the parties executed *952 December 15, 1980, provided that the agreement to pay five hundred dollars ($500.00) per month for both spousal and child support ($200.00 for wife and $300.00 for children) would become null and void in the event either the husband or wife initiated court action with a view toward terminating the marriage relation. The appellee began a suit for divorce on September 17, 1982, when he filed an answer and crossbill for divorce in response to the suit for separate maintenance filed on August 18, 1982, by appellant. This action comes within the terms of the separation agreement and renders it void as of that date. Appellee discontinued payment of the $200.00 per month support beginning in July, 1982, but continued paying the $300.00 per month child support. Under the provisions of the separation agreement, appellant was entitled to $200.00 per month for July, August, and September, 1982, which amounts to six hundred dollars ($600.00), and judgment will be entered here in favor of appellant for that amount.

CROSS-APPEAL
The cross-appellant, Forrest William Churchill, contends (1) that the lower court erred in admitting into evidence over objection of opposing counsel Exhibits 1 and 3 which are copies of the agreements entered into by the parties, and (2) the trial court erred in awarding appellant $150.00 per month in temporary alimony, or in the alternative, that the award was excessive. In view of the decision on the direct appeal it is unnecessary to discuss these assignments.
The cross-appellant (3) contends that the lower court erred in failing to award paramount care, custody and control of the parties' minor children to the appellee. The lower court found that both parents were fit and suitable persons to have custody of the children and awarded their paramount care, custody and control to the cross-appellee with extensive visitation rights to cross-appellant. We have considered the record and the finding of the court, and are of the opinion that the court was not manifestly wrong in fixing custody of the children.
Therefore, the judgment of the lower court will be affirmed on the cross-appeal.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.