This is another of those cases where fidelity to law makes us leave legally married two people who despise each other.
James W. Wilson (hereinafter "James"), age 48, is an attorney engaged in the solo practice of law in Biloxi, Mississippi. He lives in Ocean Springs, Mississippi. James was married to Lynda J. Wilson, age 43, on February 16, 1984. This was the second marriage for each of the parties. Lynda had been previously married to another Biloxi attorney, James' former law partner. That partnership had been dissolved in 1977 under particularly acrimonious circumstances. Lynda by her first husband is the mother of three sons. James' first marriage had produced three girls.
Soon after James and Lynda were married, the two consolidated their households, and Lynda realized a $45,000 profit from the sale of her house. The couple immediately spent $17,000 of this gain to improve James' house in Ocean Springs. With the remainder of this money, Lynda purchased various investments which she kept in her own name.
Almost from the start, things did not go well with the Wilsons. James accused Lynda of conducting a continuing liaison with her first husband, a man for whom he still held an intense hostility. Lynda leveled similar charges at James. Since each spouse was also a non-custodial parent, there were frequent disagreements regarding the scheduling of the children's visitation.
Money, too, was a problem. James had recently returned to his law practice after a less-than-successful foray into the real estate business. James had found it necessary to borrow heavily to aid him in the re-establishment of his practice. He often criticized Lynda's spending habits, claiming that his income was insufficient to provide her with all of the luxuries she desired. The couple finally separated on January 6, 1987, after 35 months of marriage. On that date Lynda filed her complaint for divorce in the Chancery Court of Jackson County, Mississippi, alleging the ground of habitual cruel and inhuman treatment. James denied the allegations of the complaint, and charged Lynda with habitual cruel and inhuman treatment.
A hearing on the merits commenced on April 28, 1987, in Jackson County Chancery Court. James and Lynda testified as to various incidents of perceived verbal and psychological abuse inflicted upon each. Both Lynda and James produced witnesses to corroborate their testimony regarding the evil disposition and tantrums of the other. The Court in the end decreed them divorced.
It would serve no useful purpose to detail further the facts of this case. Suffice it to say that beyond peradventure the marriage of James W. Wilson and Lynda J. Wilson is a shambles, as it has been almost from the date of its making. James and Lynda genuinely hate each other, the suggestion that anyone try to ferret out fault borders the impossible and as well the disingenuous. The Court below summed it up: "Obviously this marriage is over. . . . It's evident that this wasn't one of those marriages that was made in heaven." While factually accurate, the Court's comments, unfortunately, are of no legal effect. There is simply no evidence in the case that comes close to suggesting that either James or Lynda has been guilty of habitual cruel and inhuman treatment of *Page 805 
the other. Miss. Code Ann. § 93-5-1 [Seventh] (1972).
In years gone by, this Court consistently held that habitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may reasonably be said a permanent condition. See, e.g., Russell v. Russell,157 Miss. 425, 128 So. 270 (1930); Humber v. Humber, 109 Miss. 216, 68 So. 161 (1915). There came a thaw in the judicial attitude, a recognition of the inhumanity of the law, wherein we but blinked at the proof and allowed many a divorce on grounds of habitual cruel and inhuman treatment where in candor and fact we could but find irreconcilable differences. See, e.g., Wires v. Wires,297 So.2d 900, 902 (Miss. 1974).
This Indian summer as all others proved false and soon ended.Marble v. Marble, 457 So.2d 1342 (Miss. 1984); and Gallaspy v.Gallaspy, 459 So.2d 283 (Miss. 1984). It is the law in this state that the legislature has exclusive authority to provide the grounds for divorce, Criswell v. Criswell, 254 Miss. 746, 753,182 So.2d 587 (1966); Carson v. Carson, 40 Miss. 349 (1866), and our oaths require that we take seriously the grounds we have been given. Since Marble and Gallaspy we have consistently insisted that parties seeking divorce on grounds of habitual cruel and inhuman treatment prove that the conduct of the offending spouse really was cruel and inhuman, and habitually so, taking the legislative language by its common and ordinary meaning. Day v. Day, 501 So.2d 353, 354 (Miss. 1987);Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss. 1986);Haralson v. Haralson, 483 So.2d 378 (Miss. 1986); Fournet v.Fournet, 481 So.2d 326, 328-29 (Miss. 1985); Kergosien v.Kergosien, 471 So.2d 1206, 1209 (Miss. 1985); Churchill v.Churchill, 467 So.2d 948, 950-51 (Miss. 1985); Stennis v.Stennis, 464 So.2d 1161 (Miss. 1985).
Effective July 1, 1976, the legislature substantially humanized the domestic relations law of this state, providing that parties could obtain divorces on grounds of irreconcilable differences.See Miss. Laws, ch. 451 (1976), now codified, as amended, as Miss. Code Ann. § 93-5-2 (Supp. 1989). The problem with that act is that it requires that all financial matters incident to the divorce be resolved by voluntary agreement. Alexander v.Alexander, 493 So.2d 978, 980 (Miss. 1986). However viable a theory of freedom of contract in other contexts, it is an oxymoron in divorce cases. The only thing James and Lynda Wilson agree upon is that each wants a divorce and each wants the blame put on the other. The record before us indicates no possibility of agreeing upon who gets the two cars, certain antique jewelry, much less whether and what alimony should be awarded. These two people can't even agree what day of the week it is. Yet Section93-5-2 blithely proceeds on the premise that parties having irreconcilable differences regarding their marriage will somehow be able to reconcile their differences on financial matters.
In Gallaspy, a majority of this Court recognized the deficiencies in our Irreconcilable Differences Act, principally that as it stands the act facilitates financial blackmail.Gallaspy v. Gallaspy, 459 So.2d at 286-88; see also Alexanderv. Alexander, 493 So.2d 978, 980-82 (Miss. 1986) (Robertson, J., concurring). The spouse who will be providing the alimony and child support may present the other the Hobson's choice: knuckle under and accept less than favorable financial terms or go to court and try to obtain a contested divorce where your choices then are lie or lose. What public policy is served by such a law escapes us.
What is needed is a simple amendment to Section 93-5-1
providing for a thirteenth ground for divorce: irreconcilable differences. That ground for divorce should be subject to proof as any other. The defendant's denial should have no more effect than his or her denial in the case of any of the other twelve grounds for divorce. That one spouse out of blindness, obstinance or nostalgia refuses to recognize it hardly *Page 806 
means that a marriage may not in fact be irretrievably broken. Most important, the defending spouse's refusal to agree on financial matters would be no bar to the granting of the divorce because of irreconcilable differences. Gallaspy, 459 So.2d at 287.
Knowing well that we work hardship and injustice upon the parties, we accept our responsibility on our oaths and declare that the judgment below reversed, that the complaint of Lynda J. Wilson for divorce be dismissed and judgment thereon rendered in favor of James W. Wilson; and that the judgment in favor of Lynda J. Wilson entered below dismissing the counterclaim of James W. Wilson be affirmed. Costs are divided and taxed in equal shares to the parties.
ON DIRECT APPEAL, REVERSED AND RENDERED; ON CROSS-APPEAL,
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.