641 So.2d 1167 (1994)
Kathy Elizabeth Bennett STEEN
v.
Gerald Don STEEN.
No. 92-CA-01316.
Supreme Court of Mississippi.
August 11, 1994.
Cynthia Langston Lott, Langston Frazer Dockins & Sweet, Jackson, for appellant.
Donald A. McGraw, Jr., Montgomery, Smith-Vaniz & McGraw, Canton, for appellee.
Before PRATHER, P.J., and SULLIVAN and ROBERTS, JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:

I.

INTRODUCTION
After nine years of marriage, Kathy Elizabeth Steen ("Kathy") sought a divorce from her husband Gerald Don Steen ("Gerald") on grounds of habitual cruel and inhuman treatment. The Madison County chancellor dismissed *1168 Kathy's complaint for divorce, granted custody of the couple's two children to Kathy, and ordered that she maintain health insurance for them as a form of separate maintenance. Gerald was not required to pay any child support. Kathy appeals, alleging the following errors:
I. THE TRIAL COURT ERRED IN REFUSING TO GRANT KATHY ELIZABETH BENNETT STEEN A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT AND IN DISMISSING HER COMPLAINT FOR DIVORCE.
II. THE TRIAL COURT ERRED IN FINDING THAT GERALD DON STEEN WAS ENTITLED TO SEPARATE MAINTENANCE.
III. THE TRIAL COURT ERRED IN REFUSING TO GRANT ANY AMOUNT OF CHILD SUPPORT TO BE PAID BY THE NON-CUSTODIAL PARENT TO THE CUSTODIAL PARENT, KATHY ELIZABETH BENNETT STEEN.
IV. THE TRIAL COURT ERRED IN REFUSING TO ORDER THE NON-CUSTODIAL PARENT TO SHARE IN THE COST OF HIS CHILDREN'S MEDICAL EXPENSES AND DENTAL EXPENSES.
We affirm the chancellor's dismissal of Kathy's complaint for divorce, as well as his order that she maintain health insurance for the children, but we remand for further findings on the issue of child support only.

II.

FACTS AND PROCEDURAL HISTORY
Gerald and Kathy were married on August 21, 1982, in Attala County, Mississippi. Two children were born of this marriage, Jeffrey Warren Steen, born in 1983, and Gencey Elizabeth Steen, born in 1986. Gerald, thirty-four, is a sales manager for LuVel Dairy. Kathy, thirty-one, is a consultant with the Central Data Processing Authority, State of Mississippi.
Kathy and Gerald experienced marital difficulties for several years prior to the complaint for divorce. They sought counseling with several individuals, to no avail. On April 19, 1991, Kathy filed a complaint for divorce on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. An order entered June 10, 1991, granted Kathy temporary custody of Jeffrey and Gencey. Gerald was ordered to pay $375.00 per month in child support, and to maintain medical insurance on the children.
Gerald's answer and counterclaim, filed July 12, 1991, moved to dismiss Kathy's complaint on the ground she had abandoned the marriage without cause. Gerald requested separate maintenance and custody of the children.
Trial was held September 28-29, 1992. During the presentation of her case in chief, Kathy claimed that she had suffered both physical and emotional trauma inflicted by Gerald. She testified that she had begun to show physical manifestations in the form of weakness and fatigue in late 1985 or early 1986. In addition, she testified to two incidents of physical harm. The first incident took place in February or March of 1991. Kathy testified that Gerald became angry, pushed her down on the bed, and while holding her down, repeatedly pinched her hard enough to cause bruises on her arms and upper body. Gerald admitted to the pinching; he testified that Kathy had deliberately provoked his anger by asserting that she had slept with another man, and by expressing further desire to sleep with other men. Kathy, while admitting to an affair with a co-worker in 1984 or 1985, denied telling Gerald of the affair that day. However, she stated that there was a "possibility" she intentionally told Gerald that she wanted to go to bed with other men. Several days after this incident, Kathy and the children moved out of the marital home, into a two bedroom apartment. Kathy testified she left out of fear that Gerald would hit her again and kill her.[1]
*1169 The second incident occurred after the separation, when Gerald went to Kathy's apartment and attempted to take Jeffrey home with him against Kathy's wishes. Kathy asserted that after she ordered him to leave, Gerald dragged her back inside the apartment, scraping her arm on the door facing. Gerald testified that when he picked Jeffrey up and attempted to leave the apartment, Kathy tried to intervene, and her arm was scratched.[2]
Kathy testified that during the marriage, she and Gerald were in constant conflict over finances. Kathy complained that Gerald made all financial decisions in the marriage, and that he made major investments without consulting her. Gerald testified that he did in fact consult Kathy, or attempted to consult with her, on major business decisions.
Other problems complained of by Kathy included a lack of privacy from Gerald's family; Gerald's nagging and constant criticism for her failure to attend church on Sunday or Wednesday nights; disagreement over their sons' involvement in baseball; a lack of intimacy; her sole responsibility for the children; Gerald's complaints that she did not keep an immaculate house, along with his refusal to perform household chores; Gerald's constant bullying and intimidation. Kathy also testified that Gerald became very judgmental after being elected a deacon.
Kathy acknowledged during her testimony that she was dissatisfied with the marriage from its inception until the separation in March of 1991. Kathy also testified that she did not love Gerald and was afraid of him.
Gerald testified he still loved Kathy, despite their marital problems, and that he had never wanted a divorce. Gerald stated that shortly after he became a deacon in the First Baptist Church of Ridgeland in January of 1991, Kathy told him that she wanted a divorce, that she could not be a deacon's wife, and that she wanted her space and freedom. According to Gerald, Kathy also told him that she did not love him, that she had never loved him, and that she never even wanted to marry him. Gerald testified that after their separation, Kathy often brought up the subject of divorce. Gerald stated that he told Kathy he had forgiven her adultery, and desired only that she return to the marital home; he did not wish to divorce and would not agree to one.
At the conclusion of Kathy's case in chief, her complaint for divorce was dismissed. After hearing Gerald's evidence, which focused on custody of Jeffrey and Gencey, the chancellor awarded custody of the children to Kathy. Gerald was awarded visitation rights, use and benefit of the marital home and ordered to make the mortgage payments on the home. Kathy was ordered to pay medical insurance for the children and costs of court, in place of separate maintenance paid to Gerald. The chancellor stated in his judgment that Gerald should not be required to pay child support to Kathy "at this time."
Kathy's motion to amend the chancellor's judgment was denied.

III.

DISCUSSION OF ISSUES

Scope of Review
Our scope of review in domestic relations matters is limited. "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss. 1990). See also Faries v. Faries, 607 So.2d 1204, 1208 (Miss. 1992). In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." Newsom v. Newsom, 557 So.2d 511, 514 (Miss. 1990). See also Dillon v. Dillon, 498 So.2d 328, 329 (Miss. 1986). This is particularly true "in the areas of *1170 divorce and child support." Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989).

1. Habitual Cruel and Inhuman Treatment
Kathy claims her proof was sufficient to establish by a preponderance of the evidence that she was entitled to a divorce from Gerald on the ground of habitual cruel and inhuman treatment.
We have studied the testimony and disagree. The standard applicable to a divorce sought on the ground of habitual cruel and inhuman treatment was recently stated:
In years gone by, this Court consistently held that habitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may reasonably be said a permanent condition.
Smith v. Smith, 614 So.2d 394, 396 (Miss. 1993), citing Wilson v. Wilson, 547 So.2d 803, 805 (Miss. 1989). See also Stennis v. Stennis, 464 So.2d 1161 (1985); Gallaspy v. Gallaspy, 459 So.2d 283 (Miss. 1984); Marble v. Marble, 457 So.2d 1342 (Miss. 1984).
While habitual cruel and inhuman treatment may be established by a preponderance of the credible evidence, as opposed to clear and convincing evidence, the charge "means something more than unkindness or rudeness or mere incompatibility or want of affection." Wires v. Wires, 297 So.2d 900, 902 (1974). "(T)here must be proof of systematic and continuous behavior on the part of the offending spouse which goes beyond mere incompatibility." Parker v. Parker, 519 So.2d 1232, 1234 (Miss. 1988). We have counseled against the awarding of a divorce on the grounds of habitual cruel and inhuman treatment where the lawsuit is based merely "on petty indignities, frivolous quarrels, general incompatibility and the petulant temper of one or both parties." Howard v. Howard, 243 Miss. 301, 303-04, 138 So.2d 292, 293 (1962).
Kathy was asked why the separation took place and testified as follows: "I was afraid to stay in the house with Gerald any longer. I was afraid that he would hit me again and that he would kill me." Kathy, however, failed to demonstrate cruelty and inhuman treatment as those terms have been defined by our decisions. Rather, her proof demonstrated the incompatibility, indignities, and intense quarreling to which we alluded above. "The cruelty required by the statute is not such as merely to render the continuance of cohabitation undesirable, or unpleasant, but so gross, unfeeling and brutal as to render further cohabitation impossible except at the risk of life, limb, or health on the part of the unoffending spouse; and that such risk must be real rather than imaginary, merely, and must be clearly established by proof." Howard v. Howard, 243 Miss. 301, 303-04, 138 So.2d 292, 293 (1962). We agree with the chancellor that Gerald's conduct did not rise to this level.
Kathy also failed to show that Gerald's conduct was "habitual" or "permanent" in nature. See, e.g., Wilson v. Wilson, 547 So.2d 803, 805 (Miss. 1989) ("course of conduct ... must be habitual, that is, done so often, or continued so long that it may reasonably be said a permanent condition"). The "pinching" and "arm scratching" incidents were the only two episodes of their kind during nine years of marriage.
Kathy, who wanted a divorce as early as 1985, was unhappy in the marriage. Absent cruel and inhuman treatment as the proximate cause of a spouse's marital unhappiness, mere dissatisfaction is insufficient to warrant a divorce. Marble v. Marble, 457 So.2d 1342 (Miss. 1984). Kathy, no doubt, was the object of criticism. Such conduct, however, does not fulfill the requirements of a divorce on the grounds of habitual cruel and inhuman treatment. Gallaspy v. Gallaspy, 459 So.2d 283 (Miss. 1984).
We are compelled to agree with Gerald that there was no evidence presented by Kathy which demonstrated habitual cruelty or inhuman treatment which endangered Kathy's life, limbs, or health.

*1171 2. Separate Maintenance

The chancellor ordered Kathy to "maintain medical insurance" for the two children, as a form of separate maintenance. Kathy claims that Gerald materially contributed to the separation of the parties, and is therefore not entitled to separate maintenance. Gerald contends that Kathy is required to provide support for him because Kathy abandoned the marital home, and refused his requests that she and the children return home.
"Separate maintenance is a judicial command to one's spouse to resume cohabitation or to provide support." Weiss v. Weiss, 579 So.2d 539, 542 (Miss. 1991), citing Williams v. Williams, 528 So.2d 296, 298 (Miss. 1988).
It was obviously the intention of the chancellor to encourage the parties to resume cohabitation. In his ruling issued from the bench, the chancellor stated that he was of the opinion that Gerald was "entitled to separate maintenance based on the testimony of [Kathy] that she had, in fact, made arrangements to leave the marital home prior to her actually leaving and that she had already rented an apartment and made those arrangements." Custody of the children remained with Kathy because the chancellor felt it was in their best interest not to disrupt their school schedule. The chancellor noted especially that Jeffrey and Gencey were two fine children, and expressed hope that they would serve as a catalyst to bring the parties back together. We do not feel the chancellor was manifestly wrong in either his reasoning or his ruling.
In making an award of separate maintenance, the chancellor should consider the health of the husband and the wife, their earning capacities, the reasonable needs of the custodial parent and children, the necessary living expenses of the non-custodial parent, and any other relevant facts and circumstances. Robinson v. Robinson, 554 So.2d 300, 305 (Miss. 1989); Gray v. Gray, 484 So.2d 1032, 1033 (Miss. 1986). Expenses for medical insurance and medical care are expenses which may be properly awarded pursuant to valid child care and maintenance orders. Nichols v. Tedder, 547 So.2d 766 (Miss. 1989).
Both Gerald and Kathy are healthy and in their middle and early thirties. Evidence at trial showed that Kathy's income exceeded Gerald's throughout the marriage; at the time of the hearing, Kathy was earning $2,932.44 per month as a consultant with the State of Mississippi, while Gerald was earning $2,166.66 per month as a manager at LuVel Dairy. Nothing in the record suggests that the reasonable needs of the children are not being met at the present hour. There is no evidence that Kathy cannot secure medical insurance through the health insurance plan available to employees of the State of Mississippi. Accordingly, we cannot say the chancellor was manifestly wrong in ordering Kathy to maintain medical insurance on the two children.

3. Child Support
The chancellor stated in his Final Judgment that Gerald would not be required to pay child support to Kathy for the care and maintenance of the minor children "at this time." Obviously, the chancellor contemplated the possibility of a modification at some point in the future in the event of a material change.
We have held that the specific need or support required is to be determined by a chancellor "at a time real, on a scene certain, and with a knowledge special to the actual circumstances and to the individual child or children." Smith v. Smith, 614 So.2d 394, 397 (Miss. 1993), citing Thurman v. Thurman, 559 So.2d 1014, 1018 (Miss. 1990).
Accordingly, we remand this case to the chancellor for a fresh determination of the appropriate factors to be considered in awards of child support. See, e.g., Cupit v. Cupit, 559 So.2d 1035, 1037 (Miss. 1990); Miss. Code Ann. § 93-5-23 (Supp. 1993).

IV.

CONCLUSION
We affirm the chancellor's denial of Kathy's complaint for divorce, as well as his order that Kathy maintain health insurance on the two children. We remand for further *1172 findings on whether Gerald should be required to pay child support to Kathy.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THE OPINION OF THIS COURT.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., concurs in part and dissents in part with separate written opinion.
McRAE, Justice, concurring in part, dissenting in part:
I agree with the majority's decision to affirm the dismissal of Kathy Steen's complaint for divorce as well as the chancellor's decisions regarding separate maintenance and the children's health and dental insurance. However, I dissent from that part of the opinion which calls for remand of the case on the issue of child support.
The chancellor ordered that Gerald would not be required to pay child support for the couple's two children "at this time." Despite its observation that nothing in the record indicates that the reasonable needs of the children are not being met at this time, the majority turns around and remands the case so that the chancellor might make a "fresh determination" of the need for child support! In his final judgment, the chancellor correctly noted that modification of the judgment might be necessary at some future date. However, modification of child support obligations is predicated upon the occurrence of some material change of circumstances in the lives of the child or one of its parents. McEachern v. McEachern, 605 So.2d 809, 813 (Miss. 1992). These changes include:
(1) increased needs of children due to advanced age and maturity, (2) increase in expenses, (3) inflation, (4) relative financial condition and earning capacity of the parties, (5) health and special medical needs of the child, both physical and psychological, (6) health and special medical needs of the parents, both physical and psychological, (7) necessary living expenses of the father, (8) estimated amounts of income taxes each party must pay on his income, (9) free use of residence, furnishings and automobile, and (10) other facts and circumstances bearing on the support as shown by the evidence.
Id., citing Adams v. Adams, 467 So.2d 211, 215 (Miss. 1985). The burden of showing a material change in circumstances is on the parent who seeks modification. McEachern, 605 So.2d at 813. In the case sub judice, however, the majority has taken the unprecedented step of staging a hearing on the issue of child support when, in fact, neither party has put on any evidence whatsoever of changes in the circumstances of the children or their parents since the initial judgment was entered. The chancellor's acknowledgment that some modification might be appropriate in the future  if changes in circumstances so warrant  is no basis for this Court to remand for redetermination at this time. It is incumbent upon the parties, not this Court, to raise the issue of modification when and if they can sustain the burden of showing that a material change in circumstances has occurred. Accordingly, I dissent.
NOTES
[1] Other testimony indicated that Kathy had made plans to move into the apartment even prior to the pinching incident.
[2] Gerald denied that during the "pinching" incident he grabbed Kathy around the throat and threatened to break her neck; denied there was any pushing, shoving, or fighting during the postseparation incident at Kathy's apartment; he denied that he ever threatened to throw Kathy out of the house, to kill Kathy, or to damage her vehicle; he denied that he had ever punched a hole in the wall with his fist and he denied he had ever had Kathy followed by a private detective.