IN THE SUPREME COURT OF MISSISSIPPI
NO. 94-CA-01101-SCT

*RUTH M. LANE*

*v.*

*JAMES B. LANE*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/94 |
| TRIAL JUDGE: | HON. ANTHONY THOMAS FARESE |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. WALKER |
| | JOHN DAVID WEDDLE |
| ATTORNEY FOR APPELLEE: | GEORGE MCFALL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 2/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

From an October 18, 1994 order of the Marshall County Chancery Court granting James Lane a divorce on the ground of habitual cruel and inhuman treatment, Ruth Lane now appeals to this Court, asserting:

 I. THE CHANCELLOR ERRED IN NOT AWARDING THE APPELLANT SUFFICIENT ALIMONY PAYMENTS;

 II. THE CHANCELLOR ERRED IN NOT AWARDING THE APPELLANT USE AND POSSESSION OF THE MARITAL HOME;

 III. THE CHANCELLOR'S GRANT OF A DIVORCE TO THE APPELLEE ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT IS AGAINST THE OVERWHELMING AND SUBSTANTIAL WEIGHT OF THE EVIDENCE;

IV. THE CHANCELLOR ERRED IN REFUSING TO GRANT THE APPELLANT A DIVORCE ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT; AND

V. THE CHANCELLOR ERRED IN NOT AWARDING THE APPELLANT ATTORNEY FEES.

We find no merit to her assignments of error and affirm the chancellor's judgment.

## I.

Ruth and James Lane were married on January 18, 1964 in Lawrence County, Alabama. On February 7, 1994, Mrs. Lane filed a complaint for divorce on grounds of habitual cruel and inhuman treatment, or in the alternative, irreconcilable differences, seeking an equitable division of the property acquired during the marriage, alimony and attorney fees. Mr. Lane filed a counterclaim, also seeking a divorce on grounds of habitual cruel and inhuman treatment, or, in the alternative, irreconcilable differences.

After the September 28, 1994 hearing, the chancellor found that James Lane was entitled to a divorce on the ground of habitual cruel and inhuman treatment. He ordered the marital home to be sold by a special commissioner, with the proceeds to be divided between the parties and the option given to each party to buy out the other's half. Aside from those items of personal property requested by Mr. Lane, Mrs. Lane was awarded the contents of the house. The parties each were awarded the motor vehicles currently in their possession. Mr. Lane was granted possession of the couple's two dogs and their dog house.

In addition to half the marital dwelling and most of the personal property therein, Mrs. Lane was awarded a lot in Ocean Springs. Mr. Lane was ordered to pay $300 a month in alimony as well as her medical insurance in the amount of $232 per month as long as she was eligible for a COBRA entitlement. He further was ordered to pay her $2,250, half of his cash savings, upon the entry of the divorce decree. With the exception of a $7,000 GM Visa cash advance incurred after the separation for which Mrs. Lane was responsible, Mr. Lane was liable for repayment of all credit card indebtedness and household expenses incurred prior to February 25, 1994. Mrs. Lane otherwise was liable only for those credit card debts incurred after that date.

The parties were found to be responsible for their own attorney fees and each charged with one-half of the court costs incurred.

## II.

According to sixty-two year-old Ruth Lane, "he should never have married me under the certain conditions, he should have told me the truth . . . He should have told me about his life." To wit, she complained that he couldn't have children, was tight with money, was high-tempered and would throw things and break out windows. She stated that he would write notes and "cuss her," which "had me nervous." She testified that her husband carried a gun and had pulled it on her "many times," and then denied that he had ever done so. She variously claimed that Lane was following her, that he had people following her and trying to kill her, that he was peering in her bedroom window and tearing a hole in the roof and sleeping in the attic, and that he was hiding behind some bushes and

watching her while she fed the horse. She complained that they hadn't had sex in twenty-five years, but stated that she had moved to a separate bedroom because he slept with ten quilts on his bed.

Her seventy-six year-old husband tells of a woman who stayed on the road "preaching" and in the last five or ten years of the marriage, didn't fix meals for him or do his laundry. He testified that she had denied him sex, and although he told her that he loved her, she never expressed such sentiment for him. To the contrary, she frequently threatened to divorce him and run off with "a Holy Roller preacher." At night, he said, "she beat on a pan and kicked on the door. I quit closing the door, and she would rap on the door, anything to make noise to keep me awake." Her behavior had affected his health, as he stated, "Well, I couldn't get no sleep, one reason. And when I went to work, she always had something smart to say to me, or run me down, or talk about me, or -- you can't work that way."

The obvious rancor between the two reached its crescendo in January, 1994, when Mrs. Lane hit her sleeping husband over the head with a pillow with a flashlight inside. After he told her to get out of the room, she apparently called the police, who came to the scene and threatened to put one of the two in jail if they didn't settle down. After the police left, Mrs. Lane allegedly returned to her husband's room, pulled his 357 Magnum from under his pillow, punched him in the head with it and told him, "I ought to blow you away." Mrs. Lane claimed that she just hit him with a pillow he had thrown on the floor for the dog to sleep on and denied that she later threatened him with his gun. Mr. Lane's version of the entire story, however, was corroborated by his sister, Betty Jean Neal, who testified that he showed up at her house the next afternoon sporting an egg-sized bump and a small gash on the right side of his head, quite distressed about the entire incident.

Mr. Lane served in the Navy for twenty years prior to his marriage, retiring in 1961. He then went to work for Dover Elevator, where he worked for thirty years before retiring at the age of seventy-three. At the time of these proceedings he received a monthly pension of $732.72 from the Navy and $377.83 from Dover Elevator, in addition to $1148 in monthly Social Security benefits, totaling $2,249.55.

Sixty-two year old Ruth Lane worked occasionally as a telephone operator and in telephone sales. She last worked from 1985 to 1987, doing telephone sales for Sears maintenance agreements. In recent years, she has been involved in a charismatic ministry, preaching, "counseling" and "laying on hands."

The couple's primary asset is the marital dwelling in Byhalia, Mississippi. Although no present market value is indicated in the record, Mrs. Lane's financial statement shows the cost of the house as $87,000 with an Mfg. [sic] balance of $29,800 and other liens of $10,000. There is also a lot in Ocean Springs, Mississippi, on which Mrs. Lane's mother made the $2,500 down payment and Mr. Lane made the remainder of the payments over the first ten years of their marriage. Mr. Lane testified that the lot was worth about $15,000, while Mrs. Lane thought it was only worth about $5,000. Mr. Lane had accumulated some $14,000 in his credit union and savings accounts which he had converted into cash and kept in a brown envelope in a drawer at the house. He testified that when Mrs. Lane needed some money, he had given her $3,000, but the rest of it turned up missing. At the time of the hearing, he still had some $4,500 left.

III.

Mrs. Lane first complains that the amount of periodic alimony awarded is inadequate. Where the adequacy of an alimony award is at issue, "we will only interfere where the decision is seen to be oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion." ***Monroe v. Monroe***, 612 So. 2d 353, 357 (Miss. 1992); ***McNally v. McNally***, 516 So. 2d 499, 501 (Miss. 1987). We consider the amount of periodic alimony awarded in light of the equitable distribution made of the couple's marital property. ***Brooks v. Brooks,*** 652 So. 2d 1113, 1120-21 (Miss. 1995). The Court further must consider the burden placed on Mr. Lane, the payor spouse, as well as his right "to lead as normal a life as possible with a decent standard of living." ***Brendel v. Brendel,*** 566 So. 2d 1269, 1272 (Miss. 1990); ***Massey v. Massey,*** 475 So. 2d 802, 803 (Miss. 1985). We look, too, at the guidelines first set forth in ***Brahbam v. Brahbam,*** 226 Miss. 165, 176, 84 So. 2d 255, 259 (1955).

"In the final analysis, all awards should be considered together to determine that they are equitable and fair." ***Brooks,*** 652 So. 2d at 1124 (quoting ***Ferguson v. Ferguson***, 639 So. 2d 921, 929 (Miss. 1994)). The Lane's major asset is the marital dwelling, which was ordered to be sold and the proceeds divided between the two, allowing, however, Mr. Lane reimbursement for half of his expenses incurred in maintaining the house until it sold. Mrs. Lane was also awarded a lot in Ocean Springs that her mother had purchased but that Mr. Lane had made payments on for ten years after they were married. She further was awarded half of his remaining cash savings, in addition to the $1, 000 he had given her on March 1, 1994. Mr. Lane receives monthly retirement benefits totaling $2, 249.55.[1] Mrs. Lane, in addition to receiving well over half the marital property and temporary use of the house, was awarded $532 per month in periodic alimony and health insurance premiums. Considering the overall award made in light of the assets available and the reasonable needs of the parties, we do not find it to be inequitable and unfair, or so grossly inadequate as to constitute an abuse of discretion.

IV.

In her petition for divorce, Mrs. Lane specifically requested the equitable division of the couples' real and personal property. She did not request use and/or possession of the marital dwelling. She now asserts that because of her contributions as homemaker and her financial situation, the chancellor erred in not awarding her use and/or possession of the house. Nothing in the record suggests that Mrs. Lane contributed much to the economic or emotional well-being of her home. Given the facts of the case and the fact that Mrs. Lane did not seek the exclusive use and/or possession of the house in her complaint for divorce, it cannot be said that the chancellor was manifestly wrong in ordering the house sold and the proceeds divided, or that his decision was unsupported by the evidence. ***Maslowski v. Maslowski***, 655 So. 2d 18, 20 (Miss. 1995).

V.

Mrs. Lane next asserts that the chancellor erred in granting Mr. Lane a divorce on grounds of cruel and inhuman treatment and that she, not Mr. Lane, should have been awarded a divorce. When considering whether a divorce should have been granted on these grounds, we turn to ***Wilson v. Wilson,*** 547 So.2d 803 (Miss. 1989), wherein this Court stated:

> In years gone by, this Court consistently held that habitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of

danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may reasonably be said [to be] a permanent condition.

*Id.* at 805. We generally have adhered to the rule that more than mere unpleasantness is required for the grant of a divorce on grounds of habitual cruel and inhuman treatment. *See, e.g., Brooks,* 652 So. 2d at 1125 ("The best that Robert can argue is that Jane was not congenial towards him."); *Ferguson,* 639 So. 2d at 931 (no proof that wife had "a habit of assaultive behavior or conduct" which husband reasonably feared or which adversely affected his health).

Mrs. Lane's behavior toward her husband has gone beyond mere rudeness and unkindness. Not only does there appear to be a long-standing pattern of habitual behavior interfering with his sleep and general well-being, but also the January, 1994 assault must be considered. The chancellor, therefore, did not abuse his discretion in granting the divorce to Mr. Lane. *See Hyer v. Hyer,* 636 So. 2d 381, 384 (Miss. 1994)(chancellor erred in granting a divorce on grounds of habitual cruel and inhuman treatment to both parties, but since the husband was less at fault than the wife, who had assaulted him, this Court affirmed the grant of a divorce on this ground to the husband, but reversed as to the grant of a divorce to the wife).

Mrs. Lane asserts that her husband swore at her and complains of his alleged impotence and refusal to adopt children. She testified that she takes medication for her nerves and to help her sleep, but no causal relationship between Mr. Lane's alleged behavior and Mrs. Lane's need for medication is established in the record. We do not find that the chancellor abused his discretion in denying her request for a divorce.

## VI.

Attorney fees are appropriate only where a party is financially unable to pay them. *Magee v. Magee,* 661 So. 2d 1117, 1127 (Miss. 1995); *Creekmore v. Creekmore,* 651 So. 2d 513, 520 (Miss. 1995). "'The fee should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary.'" *Creekmore,* 651 So. 2d at 520 (quoting *Dunn v. Dunn,* 609 So. 2d 1277, 1286 (Miss. 1992)); *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). Mrs. Lane has not demonstrated her inability to pay, especially in light of the chancellor's division of the marital property or any proof of her actual legal fees. The record does indicate that by the time of the September 28, 1994 hearing, Mrs. Lane was on her third attorney, had talked with at least five or six different attorneys about the case, and was convinced that Mr. Lane was "paying off" the various lawyers involved. We therefore do not find that the chancellor abused his discretion in ordering each party to pay its own attorney fees.

## VII.

Based on the record before this Court, we find no error abuse of discretion in the chancellor's grant of a divorce to Mr. Lane and awards of periodic alimony, the marital dwelling and attorney fees. We therefore affirm the order of the Marshall County Chancery Court.

**JUDGMENT IS AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**


1. The issue of whether Mr. Lane's military pension is an asset subject to equitable division was not before the trial court and was only raised for the first time in Mrs. Lane's Rebuttal Brief. Even if the issue were properly before this Court, Mr. Lane's military service predated his marriage and thus Mrs. Lane cannot be said to have made a material contribution to it acquisition. *See **Hemsley v. Hemsley,*** 639 So. 2d 909, 913 (Miss. 1994).