IN THE SUPREME COURT OF MISSISSIPPI
NO. 95-CA-00678-SCT

*JIMMY DALE POTTS*

*v.*

*ALMA JEAN RUTHERFORD POTTS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/95 |
| TRIAL JUDGE: | HON. MELVIN MCCLURE |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | VETTRA GLENN ALDERSON |
| ATTORNEY FOR APPELLEE: | ROBERT H. BROOME |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED - 10/2/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/23/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. In this case we are faced with assessing whether a divorce was properly grounded upon habitually cruel and inhumane treatment. Because we find there was not sufficient evidence of such treatment, as it has been defined and constrained by this Court's interpretation of the statutory meaning, we are compelled to vacate the divorce decree.

**I.**

¶2. Jimmy Dale Potts and Alma Jean Rutherford Potts were married on July 31, 1965 in Panola County, Mississippi. They have two children, both of whom are now grown. By all accounts, Mr. and Mrs. Potts were happily married until 1993, when Mr. Potts began to move out of their bedroom periodically when he did not get his way on marital matters, or Mrs. Potts had made him unhappy. Mrs. Potts testified that he would stay away, sleeping in their spare bedroom or on the couch. When he was ready to have physical relations, he would return to their bedroom. She testified that she would ordinarily comply with his sexual requests. Mr. Potts testified that he left their bedroom on a number of occasions.

¶3. She testified that this habit of his, storming out of their bedroom when he was mad about

something and then returning when he was ready to have sex, had been going on from around January or February 1993, and "played hard" on her nerves and hurt her emotionally. Mrs. Potts further testified that Mr. Potts had been suggested during this same time that they go their separate ways whenever "things did not go his way" in the marriage.

¶4. Sometime between May and July 1993, Mr. Potts returned from one of these sojourns in the spare bedroom, grabbed Mrs. Potts while she lay in bed trying to go to sleep, whirled her to him, and demanded to know if she was "still putting out." Mrs. Potts declined, having decided that she was not going to be used in that manner any longer. Mr. Potts corroborated this testimony, and he added that Mrs. Potts said that they would not be having physical relations again. Indeed, they have not had sexual relations since this incident. Mr. Potts testified that he did not know why she had decided that she no longer wanted to engage in such relations with him.

¶5. In August 1993, Mr. Potts moved out. He testified that he moved out because he thought that they could try to work things out if he went away for awhile. Mrs. Potts, on the other hand, testified that she thought that he had left because they both had agreed that they needed a divorce. Mrs. Potts stated that, at this point she had no expectation they would get back together, although she told him she would be willing to put some effort into the marriage again if he would go to church, any church. She testified that, while Mr. Potts had emotionally abused her, he had never hit her or otherwise physically abused her.

¶6. In any event, Mr. Potts did not begin to attend church. Over Mrs. Potts' objection, he moved back into their home in December 1993. They occupied separate bedrooms, ate separately, paid most of the bills separately, and did not interact in any manner whatsoever. Mr. Potts testified that he had asked Mrs. Potts right after he returned to possibly try marital counseling, but she refused. At the hearing, he steadfastly contended that he loved his wife and did not want a divorce and that he believed they ought to and could work things out.

¶7. Mrs. Potts filed for divorce in January 1994, on the ground of Mr. Potts' cruel and inhuman treatment. The Panola County Chancery Court held a hearing on the matter on April 6 and May 8, 1995 and granted the divorce in an oral opinion on May 8, 1995. The judge held that "[T]here is sufficient testimony to warrant the granting of a divorce to Mrs. Potts on the grounds of habitual cruel and inhuman treatment." The chancellor did not elaborate on the basis for his finding, although he did state that the cruel and inhuman treatment had been corroborated.

¶8. Mr. Potts presently appeals this divorce decree, on the sole ground that the record does not reflect sufficient evidence to support the chancery court's finding of cruel and inhuman treatment.

## II.

¶9. Mr. Potts argues that the chancery court erred in granting Mrs. Potts' divorce because there was no evidence upon which to base such a ruling. Mrs. Potts responds that the finding of cruel and inhuman treatment is one of fact and should not be disturbed by this court, since it is supported by substantial evidence in the record.

¶10. While the chancellor's determinations of the events that preceded the divorce are findings of fact, his finding that Mr. Potts' conduct rose to the level of habitual cruel and inhuman treatment as

defined as a ground for divorce in Miss. Code Ann. § 93-5-1 is a determination of law, and is reversible where the chancellor has employed an erroneous legal standard. **Bland v. Bland**, 629 So. 2d 582, 586 (Miss. 1993).

¶11. As Mr. Potts has argued, the query remains whether the chancellor correctly concluded that, as a matter of law, Mr. Potts' conduct constituted cruel and habitual treatment. We have previously held that:

> Cruel and inhuman treatment, unaccompanied by personal violence is such conduct only as endangers life, limb, or health, or creates reasonable apprehension of danger thereto, thereby rendering the continuance of the marital relation unsafe for the unoffending spouse or such unnatural or infamous conduct as would make the marital relation revolting to the unoffending spouse and render it impossible to discharge duties thereof.

**Sandifer v. Sandifer**, 215 Miss. 414, 61 So. 2d 144 (1952). We reiterated this standard in **Wilson v. Wilson**, 547 So. 2d 803 (Miss. 1989):

> In years gone by, this Court has consistently held that habitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may be reasonable said a permanent condition.

**Id.** at 805 (Miss. 1989) (denying divorce on the ground of habitual cruel and inhuman treatment although husband and wife were found to genuinely despise each other), cited in **Brooks v. Brooks**, 652 So. 2d 1113, 1124 (Miss. 1995) (affirming chancery court's failure to find the ground of habitual cruel and inhuman treatment where husband's complaint boiled down to the fact that wife was not congenial).

¶12. This Court has required more than mere unkindness or rudeness, or incompatibility or want of affection to support a finding of cruel and inhuman treatment. **Churchill v. Churchill,** 467 So. 2d 948 (Miss. 1985) (holding that party had not shown cruel and inhuman treatment even though they had irreconcilable differences and probably would never be able to live together in harmony). *See also Steen v. Steen*, 641 So. 2d 1167 (Miss. 1994) (affirming denial of divorce on ground that husband was habitually cruel and inhumane where parties fought constantly over money, husband bullied and intimidated wife, and husband had pinched her on one occasion and dragged her against a door facing on another occasion over the course of a nine year marriage; chancery court had concluded that wife was merely dissatisfied with marriage); **Wires v. Wires**, 297 So. 2d 900, 902 (Miss. 1974). We have repeatedly counseled against finding the ground based on petty indignities, frivolous quarrels, general incompatibility or petulant tempers. **Howard v. Howard**, 243 Miss. 301, 303-04, 138 So. 2d 292 (1962); *see also Wilson v. Wilson*, 547 So. 2d 803 (reversing divorce where sole ground pled, that spouse had been habitually cruel and inhumane, was not proven). And we have further noted that "[w]e recognize that courts have become liberal in the application of proof on the habitual cruel and inhuman treatment ground. However, by no means have they made a farce and mockery of the requirement to prove the ground." **Gallaspy v. Gallaspy,** 459 So. 2d 283 (Miss. 1984).

¶13. Without belittling Mrs. Potts' unhappiness with her marriage, we hold that the trial court was manifestly in error (or, alternatively, has applied an incorrect legal standard) in concluding that Mrs. Potts was subjected to habitual cruel and inhuman treatment insofar as Mr. Potts would move out of their bedroom and return when he was ready to have sex with her, culminating in the July 1993 incident when he grabbed her. Both parties testified that Mr. Potts never forced Mrs. Potts to have sexual relations, and Mrs. Potts testified that she did not seek any type of treatment for her bad nerves that resulted from his unpleasant behavior. Mr. Potts never hit her or harmed her beyond what has been described. Although Mrs. Potts is evidently ready to end her marriage and while we have no wish to force her to remain, we cannot hold that her husband's conceded conduct comes within the meaning of "habitual cruel and inhuman treatment" as has been interpreted by this Court. Since the chancery court cited no other ground for the divorce, we are compelled to reverse and vacate that decree.

¶14. REVERSED.

LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.