459 So.2d 283 (1984)
George Wofford GALLASPY
v.
Linley Richter GALLASPY.
No. 54414.
Supreme Court of Mississippi.
October 31, 1984.
Rehearing Denied December 5, 1984.
*284 Howard Dyer, Dyer, Dyer & Dyer, Greenville, for appellant.
Kay Farese Luckett, Luckett, Luckett, Luckett & Thompson, Clarksdale, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
George Wofford Gallaspy has appealed to this Court from a decree of the Chancery Court of Sunflower County, Honorable Willard L. McIlwain, presiding, granting a divorce to Linley Richter Gallaspy, together with custody of children, alimony and support for her and the children. He has assigned three errors in the trial below, the first of which complains that the lower court erred in granting a divorce to Mrs. Gallaspy on the ground of habitual cruel and inhuman treatment, and the second and third set forth that the lower court erred in the amount of alimony and child support granted and in the requirement that Mr. Gallaspy pay for the college education of Mrs. Gallaspy. We think there is merit in the first assignment of error and reverse the decree of the lower court, consequently, it is unnecessary to address the second and third assignments of error.
The bill of complaint charges the appellant with habitual cruel and inhuman treatment, which entitled her to a divorce from the bonds of matrimony. The parties were married July 7, 1971, and two children were born of that marriage, Audra Fox Gallaspy, age ten years, and William Harold Gallaspy, III, age 8 years. The parties were separated in November, 1981. Further, the bill of complaint alternatively charges that irreconcilable differences have arisen between the parties which would entitle either of them to a divorce. The appellant denied the allegations of habitual cruel and inhuman treatment, but admitted that there were irreconcilable differences between the parties. It is obvious that both appellant and appellee wanted a divorce, but it is also apparent from the record that they could not agree upon support, alimony and property rights, which negated a divorce on irreconcilable differences.
The appellee testified that in November, 1981, she and the two children went to church on a Sunday morning, and, upon their return home, the appellant was gone. She was not worried about his absence, but thought he was working at the airplane hangar.[1] When appellant failed to return home, she attempted to locate him. Appellee *285 was embarrassed to call appellant's mother, who lived in Greenwood, their hometown, and inquire about his absence. She called the hangar three different times during the afternoon, and, on the third call, appellant answered the telephone. Appellee asked him why he left and appellant stated that they were both unhappy, and he thought it was best to leave. She said, "He was as scared as I was at having done it  having left like this." Appellee stated that there had been no violent arguments; that there was not anything that led up to and provoked his leaving; and that there was nothing other than "natural troubles we had through the years."
The facts appellee gave as constituting habitual cruel and inhuman treatment were appellant's criticism of her being overweight; that his first priority was his work, where he spent long hours when he could have been at home; that his second priority was his mother and his father's estate; that he was critical of appellee's family; and that he did not praise or support the children enough and his discipline was too severe for them.
In order to justify a divorce on the ground of habitual cruel and inhuman treatment, such treatment must be so continuous and of such a nature that the offended spouse can no longer live with the other spouse on account of that treatment and, therefore, separates herself from such spouse. The facts of the case sub judice simply do not pass the test of habitual cruel and inhuman treatment. Under the facts, appellee could have waited for a period of one year, filed suit for divorce on the ground of wilful, continued and obstinate desertion for the period of one year, and, without question, she would have been entitled to a divorce from the appellant.
If habitual cruel and inhuman treatment is to remain the seventh ground for divorce under the divorce statutes of Mississippi, then when a complaint is filed charging that ground for divorce, the proof must sustain it. Otherwise, the ground should be repealed by the legislature, but not by the judiciary. We recognize that courts have become liberal in the application of proof on the habitual cruel and inhuman treatment ground. However, by no means have they made a farce and mockery of the requirement to prove the ground.
In Wires v. Wires, 297 So.2d 900, 902 (Miss. 1974), although the evidence on the charge of habitual cruel and inhuman treatment was not strong, the Court said:
It is true these cases held that habitual cruel and inhuman treatment should be sustained by "clear and convincing evidence." This conclusion was based upon the thesis that mental cruelty without violence required clear and convincing evidence to substantiate the charge. We have reexamined the authorities as to the degree of evidence required, and we are now of the opinion that habitual cruel and inhuman treatment may be established by a preponderance of the creditable evidence.
We agree, however, that the charge of cruel and inhuman treatment against one spouse means something more than unkindness or rudeness or mere incompatibility or want of affection. It has been said that:
"The conduct of the offending spouse must be so unkind as to be cruel, that is, so unreasonably harsh and severe as to be inhumane, so lacking in human qualities, so unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb, or health. And finally, such conduct must be habitual, that is, done so often, or continued so long, that its recurrence may be reasonably expected whenever occasion or opportunity presents itself." Bunkley and Morse, Amis on Divorce and Separation in Mississippi § 3.14(3), at 114 (1957); cited in Burnett v. Burnett, 271 So.2d 90, at 92 (Miss. 1972).
On the other hand, habitual ill-founded accusations, threats and malicious sarcasm, insults and verbal abuse may cause such mental suffering as to destroy health and endanger the life of an *286 innocent spouse. Bunkley and Morse, Amis on Divorce and Separation in Mississippi § 3.14(3), at 122 (1957).
The testimony in this case is close and lacks corroboration in many respects. Nevertheless, the chancellor was of the opinion that there was sufficient testimony in the record to establish the ground of habitual cruel and inhuman treatment.
See also Burnett v. Burnett, 271 So.2d 90 (Miss. 1972) and Richey v. Richey, 185 So.2d 431 (Miss. 1966).
The case of Marble v. Marble, 457 So.2d 1342 (Miss. 1984), involves a divorce on the ground of habitual cruel and inhuman treatment with facts similar to those in the present case. There, the lower court declined to grant a divorce on that ground, and we said:
While the record indicates it is now impossible for John to resume cohabitation with Rebecca, we are of the opinion her behavior does not constitute "habitual cruel and inhuman treatment" as this Court has defined. [Citing Burnett v. Burnett, supra].
The record reflects that appellant is a man of considerable wealth and that he has a substantial yearly income. Appellee and the children of the parties are entitled to support in accordance with their stations in life and in accordance with the means of the parties. The lower court has adequate power and authority to adjudicate the rights of the parties and the decision here does not prejudice any of them in the enforcement of those rights.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER, P.J., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
WALKER, P.J., and ROBERTSON, DAN M. LEE, PRATHER and SULLIVAN, JJ., specially concur.
ROBERTSON, Justice, specially concurring:
On July 1, 1976, the domestic relations laws of this state took a giant step forward into the real world as parties became authorized to obtain divorces on grounds of irreconcilable differences. See Miss. Laws of 1976, Ch. 451, now codified, as amended, as Miss. Code Ann. § 93-5-2 (Supp. 1983).
Prior to 1976 mature and responsible people who found their marriages irretrievably broken were offered by our law absurd choices. If they wanted to get an "uncontested divorce" the complaining spouse had to choose between outright perjury and hoping that the chancellor would not strictly enforce the standards of proof legally required to establish one of the twelve grounds for divorce. The other choice, of course, was the "knock down, drag out" fight to which the adversary system invariably leads when applied to domestic relations cases, frequently creating more problems than are solved. Divorce had become a degrading, dehumanizing experience.
In this context the 1976 act of the legislature came as a breath of fresh air. Today's decision and our recent decision in Marble v. Marble, 457 So.2d 1342 (Miss. 1984), make apparent, however, that further improvements in our law are needed. As enlightened and desirable as was the enactment of the Irreconcilable Differences Act in 1976, the job has not yet been completed. Indeed, these cases reveal what I regard as a congenital defect in our Irreconcilable Differences Act  it facilitates, even encourages, financial blackmail.
I speak here of the requirement in the law that, before a divorce may be granted on grounds of irreconcilable differences, the parties must have voluntarily negotiated and entered into an agreement respecting the custody and maintenance of children as well as all matters touching alimony and the settlement of their respective property rights. Miss. Code Ann. § 93-5-2 (Supp. 1983). While the chancery court retains the power and responsibility to assure that "adequate and sufficient provision" has been made for the custody and maintenance of children, See Tedford v. Dempsey, 437 So.2d 410, 419 (Miss. 1983), the rule *287 with respect to alimony and the settlement of property rights between the parting spouses is strictly freedom of contract. The chancery court has no authority to grant a divorce on grounds of irreconcilable differences unless the parties have reached agreement on all financial matters. What this means, of course, is that in that overwhelming majority of cases where neither spouse "has grounds" for divorce within the meaning of Section 93-5-1, the spouse wanting the divorce or feeling that he or she must obtain a divorce is subject to financial blackmail.
What happened between George and Linley Gallaspy is typical. Rather obviously neither party has "grounds" for divorce. Yet after the dust settled following George's decision to move out, Linley no doubt correctly decided that it was in her best interests to obtain a divorce. George had no objection  he just did not want to pay. He said in effect to Linley, if you want a divorce, you will agree to my terms or else you simply won't get a divorce. Linley refused to agree to George's terms and, as a result of today's decision, under the law she does not have the divorce which would no doubt be in everyone's best interests.
Looking deeper at the facts of this case, it is obvious that, once George threw down the gauntlet and refused to agree to the financial terms Linley was asking, Linley had two choices: (1) knuckle under and accept less than favorable financial terms or (2) go to court and try to obtain a contested divorce and an accompanying alimony and support award, when, as she and her lawyers surely must have known, she really did not have "grounds."
It is within the actual knowledge of every chancellor in this state and every lawyer who is in any way engaged in a domestic relations practice that this situation is repeated frequently. The spouse who will be providing the alimony and child support literally blackmails the other. Frequently, the spouse needing alimony and support is not as fortunate as Linley Gallaspy to have a stomach for litigation and a feisty lawyer to boot, as a result of which that spouse usually winds up giving in and accepting less than fair alimony and support terms. That knife is given an additional twist when we hold, as we routinely do, that the chancellor may make no modification with respect to a separation agreement made under Section 93-5-2 unless there has been a material change of circumstances since entry of the final decree of divorce incorporating the settlement agreement. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983); Marascalco v. Marascalco, 445 So.2d 1380, 1382 (Miss. 1984); Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983).
The Irreconcilable Differences Act of 1976 had clear purposes. The experience we have had with that act for the past eight years reflect that, in the particulars enumerated above, those purposes have not been fulfilled. Additional legislative surgery is appropriate.
What is needed is a simple amendment to Section 93-5-1 providing for a thirteenth ground for divorce: irreconcilable differences. That ground for divorce should be subject to proof as any other. The defendant's denial should have no more effect than his or her denial in the case of any of the other twelve grounds for divorce. That one spouse out of blindness, obstinance or nostalgia refuses to recognize it hardly means that a marriage may not in fact may be irretrievably broken. As a matter of common sense, there can be irreconcilable differences within a marriage even when one spouse refuses to accept or recognize that fact. Most important, the defending spouse's refusal to agree on financial matters would be no bar to the granting of the divorce because of irreconcilable difference.
Such an amendment would eliminate the financial blackmail sanctioned by our present law. If the spouse who is to be expected to provide financial wherewithal after the divorce becomes obstinate, the aggrieved spouse would be authorized to file a complaint for divorce in the appropriate chancery court, charging no "grounds," but maturely alleging that the parties are *288 experiencing irreconcilable differences and that the marriage qua marriage is irretrievably broken. With the kind and quality of evidence we have found inadequate today and in Marble, the chancellor could grant the divorce and then make such orders touching alimony, support and other matters as may be fair to all concerned.
Nothing said here should be taken to imply that the complaining spouse's financial demands are always reasonable. Certainly there has been many a spouse, generally the husband, who has properly objected to the departing spouse's wishes. The amendment proposed here would not leave these people helpless, at the mercy of the divorcing spouse actuated by anger, greed, desire for revenge and the like. Under the amendment proposed here, the chancellor would determine what is fair and reasonable alimony, support, etc. and this would no doubt be done with the same fairness and equal consideration to each party as has always been the case.
As it stands today, however, our law is not fair. It unfairly favors the spouse expected to pay alimony and support and makes possible not insignificant financial blackmail. The amendment suggested here no doubt would in time be seen to have its own deficiencies and inadequacies  such is the case with any new law. Without doubt it would be consistent with the spirit and purposes of the Irreconcilable Differences Act of 1976 and move us substantially closer to their realization in this state.
I concur in today's decision because I regard it as a faithful application, to the facts before us, of the law as it has been given us by the legislature. To vote my feelings would be inconsistent with my duty, as it may be said inconsistent with the legislators' duties to long leave standing the law which sanctions injustices such as that we order today.
WALKER, P.J., and DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
NOTES
[1] Appellant was in the business of servicing aviation equipment, among other things.