501 So.2d 353 (1987)
Paul DAY
v.
Ellen B. DAY.
No. 56837.
Supreme Court of Mississippi.
January 7, 1987.
Arthur D. Currie, Jackson, for appellant.
C.A. Henley, Jr., Jackson, for appellee.
Before WALKER, C.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
This appeal born of a decade of domestic intranquility presents three questions which, once the correct legal standards *354 have been identified, are largely ones of fact.
For the reasons explained below, we find well within the evidence the Chancery Court's findings that the husband had not established entitlement to a divorce on grounds of habitual cruel and inhuman treatment or constructive desertion. We further regard the finding that the husband had made no good faith offer of reconciliation, so that a prior separate maintenance decree might be avoided, as within the evidence and thus beyond our authority to disturb. We affirm.

II.
Although Paul and Ellen Day have been in and out of court for almost nine years, regarding a myriad of real and imagined reciprocal sins arising out of their marital relationship, the present proceeding dates only back to September 14, 1984. On that date Paul filed a new complaint seeking a divorce from Ellen on grounds of habitual cruel and inhuman treatment and desertion. Alternatively, Paul sought relief from the financial terms of a March 9, 1979, separate maintenance decree pursuant to which he had been providing support for Ellen. In that regard Paul alleged an attempt to reconcile the parties' conjugal differences and Ellen's refusal thereof.
The matter came on for hearing in the Chancery Court of Yazoo County, Mississippi, on December 20, 1984, and in due course thereafter the Court rendered an opinion dismissing Paul's complaint for divorce and denying his request for termination of the separate maintenance payments. The final judgment carrying that decision into effect was entered July 3, 1985. It is from that final judgment that Paul presents the instant appeal.
Paul and Ellen Day were married on May 26, 1956. Three children have been born of the marriage, Lee Allen Day, Steven Matthew Day and Roland Andrew Day. The two oldest boys are now adults, being at least 26 and 25 years of age, respectively. We are not clear whether Andy Day is 20 or 21 years old.
By way of further background, this litigational saga began May 15, 1978, one year to the day after Paul and Ellen separated. On May 15, 1978, Paul Day filed a complaint for divorce alleging habitual cruel and inhuman treatment. Ellen Day answered, alleging she was entitled to a divorce on the grounds of desertion, and filed a bill for separate maintenance. On March 9, 1979, the Chancery Court dismissed Paul's complaint, and granted Ellen's bill for separate maintenance. No appeal was taken. Thereafter, on August 6, 1980, Paul filed a petition to modify the bill for separate maintenance, but the Court ruled in Ellen's favor. Again there was no appeal.
On September 3, 1982, Ellen filed a petition for contempt alleging that Paul was in arrears in child support, and seeking money for home repair and an automobile. Paul subsequently filed his answer denying the contempt charges. On October 29, 1982, the court awarded Ellen monetary relief, but held that Paul was not in contempt. On April 6, 1984, Ellen filed another motion to cite Paul in contempt for failure to pay the amount awarded on October 29, 1982. Thereafter Paul filed an answer denying contempt and a counterclaim for divorce. Prior to the hearing on this matter, Paul paid the amount sought by Ellen, and the court dismissed the motion for contempt citation with prejudice. The complaint for divorce led ultimately to the July 3, 1985 judgment from which this appeal has been taken.

III.
Paul Day's first assignment of error is that the Chancery Court erred when it refused to grant him a divorce. As at trial, Paul here asserts alternative grounds. He claims that his proof entitled him to a divorce on grounds of habitual cruel and inhuman treatment, Miss. Code Ann. § 93-5-1 [Seventh] (1972), or, in the alternative, on grounds of desertion, Miss. Code Ann. § 93-5-1 [Fourth] (1972). We will consider the two points separately.

*355 A. Habitual Cruel and Inhuman Treatment

Paul acknowledges this Court's firm rule emanating from Gallaspy v. Gallaspy, 459 So.2d 283 (Miss. 1984), and progeny making clear that a party alleging cruel and inhuman treatment must prove systematic and continuous behavior on the part of the offending spouse that goes beyond mere incompatibility, or no divorce may be granted on such grounds. Paul contends that his evidence met this burden and that the Chancery Court erred when it refused to grant him a divorce based on the grounds of habitual cruel and inhuman treatment.
Ellen rebuts, arguing first that it is impossible for her conduct to constitute habitual cruel and inhuman treatment when she and Paul have not lived together since the separate maintenance agreement of March 9, 1979. Even so, Ellen argues that the facts proved by Paul and alleged to constitute habitual cruel and inhuman treatment are not sufficient to require the granting of a divorce on this ground.
Ellen's first contention can be answered quickly. Bias v. Bias, 493 So.2d 342, 344 (Miss. 1986), holds that there is no reason on principle why the fact that the parties have not been living together should render it legally impossible to establish cruel and inhuman treatment. A party can be granted a divorce based on incidents occurring after the parties were separated. 493 So.2d at 345.
We are concerned ultimately with whether there is substantial evidence (or a lack thereof) upon which the Chancery Court may have found for Ellen in Paul's claim of habitual cruel and inhuman treatment. At trial, Paul Day testified that Ellen had constantly refused to talk with him about family matters, or any other matter. Her drinking contributed to this problem. Paul had tried to retrieve certain items of personal property from their home and lockbox, but Ellen refused to let him have any of the items. Ellen allegedly destroyed several personal items of Paul's, i.e. college annuals, garden and garden tractor. Paul also testified that Ellen's financial practices were a source of embarrassment for him. She had attempted to borrow money from the children. Paul testified that Ellen's conduct in the aggregate has been very stressful to everyone, and is a constant source of irritation. Though concededly Ellen's actions have never put him in jeopardy of life or limb, Paul insisted that resumption of the marital relationship was impossible.
This Court has refused to allow a divorce to be granted on the grounds of habitual cruel and inhuman treatment where the facts are stronger than those in the instant case. See Haralson v. Haralson, 483 So.2d 378, 379-80 (Miss. 1986); Kergosien v. Kergosien, 471 So.2d 1206, 1209-10 (Miss. 1985); Churchill v. Churchill, 467 So.2d 948, 950-51 (Miss. 1985); Stennis v. Stennis, 464 So.2d 1161, 1162 (Miss. 1985); Gallaspy v. Gallaspy, 459 So.2d 283, 285 (Miss. 1984); Marble v. Marble, 457 So.2d 1342, 1343 (Miss. 1984). Indeed, this case is yet another in our developing litany where one spouse seeks a divorce on the basis of cruel and inhuman treatment but the problem is fundamental incompatibility.
In Gallaspy, this Court set forth the standard for determining whether the conduct of a spouse constitutes cruel and inhuman treatment:
In order to justify a divorce on the ground of habitual cruel and inhuman treatment, such treatment must be so continuous and of such a nature that the offended spouse can no longer live with the other spouse on account of that treatment and, therefore, separates herself from such spouse... . If habitual cruel and inhuman treatment is to remain the separate ground for divorce under the divorce statutes of Mississippi, then when a complaint is filed charging that ground for divorce, the proof must sustain it.
459 So.2d at 285.
These thoughts in mind, we have little hesitation in holding that the Chancery Court's ultimate finding of fact that Ellen was not guilty of habitual cruel and *356 inhuman treatment of Paul is supported by substantial evidence and is, therefore, beyond our authority to disturb. Dillon v. Dillon, 498 So.2d 328 (Miss. 1986); Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss. 1986).

B. Constructive Desertion

In the alternative, Paul contends that Ellen's actions constituted constructive desertion, therefore providing him grounds for divorce. The doctrine of constructive desertion was recognized by this Court in Griffin v. Griffin, 207 Miss. 500, 505, 42 So.2d 720, 722 (1949). See also Annotation, Acts or Omissions of Spouse Causing Other Spouse To Leave Home As Desertion By Former, 19 A.L.R.2d 1428 (1951). As one text writer notes:
If either party, by reason of such conduct on the part of the other as would reasonably render the continuance of the marital relationship unendurable, or dangerous to life, health or safety, is compelled to leave the home and seek safety, peace and protection elsewhere, then the innocent one will ordinarily be justified in severing the marital relation and leaving the domicile of the other, so long as such conditions shall continue, and in such case the one so leaving will be not guilty of desertion. The one whose conduct caused the separation will be guilty of constructive desertion and if the condition is persisted in for a period of one year, the other party will be entitled to a divorce.
Bunkley & Morse's Amis, Divorce and Separation In Mississippi, § 3.11(12) (1957).
And, this Court has held that a refusal by the husband to take his mother-in-law into his home as a permanent member of the family will not make him guilty of constructive desertion. Lynch v. Lynch, 217 Miss. 69, 83, 63 So.2d 657, 661 (1953).
The question of whether there is constructive desertion is different when one party sues for a divorce and the other party has been living apart under a separate maintenance decree rendered in his or her favor. Generally, in this situation the party who sues for divorce cannot have the question of desertion prior to the separate maintenance suit raised in the divorce suit if that matter was the subject of and was litigated in the separate maintenance suit. Bunkley & Morse's, Amis, § 3.11(15). However, in a suit for divorce, the plaintiff can show that, since the judgment for separate maintenance in favor of the defendant, the conditions have changed and the plaintiff has made efforts of reconciliation with the defendant with no avail, and hence the defendant is now a deserter and the plaintiff is entitled to a divorce for desertion. Id.
Here again we affirm. To be sure, this is one of those cases where we have before us no express findings of fact with reference to the claim of constructive desertion. It is nevertheless one of those cases where we will as a matter of institutional necessity proceed upon the assumption that the trial judge resolved the factual disputes consistent with the final judgment. See Spain v. Holland, 483 So.2d 318, 320 (Miss. 1986); Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985); Kelly v. Shoemake, 460 So.2d 811, 817 (Miss. 1984); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983). On appellate review we look at those findings which should have been made incident to the entry of the final judgment to determine whether the record contains substantial evidence to support them. In the present state of the record we have no hesitation in concluding that the Chancery Court's decision denying Paul a divorce on grounds of desertion is beyond our authority to disturb.

IV.
Paul's next assignment of error challenges the Chancery Court's refusal to discontinue his financial obligations under the prior decree for separate maintenance. Here Paul specifically challenges the Court's finding that he failed to make a good faith effort to reconcile with Ellen.
*357 In its opinion following the December 4, 1984, hearing, the Chancery Court found
that the preponderance of the evidence established that [Paul's] request [to be allowed to come] home did not constitute a good faith offer to resume a proper marital relationship... . Mr. Day apparently had made no overtures of reconciliation prior to showing up at Mrs. Day's home unannounced and proclaiming that either he was coming back or wanted to come back home. There was no evidence offered of any expression of regret or repentance on Mr. Day's part communicated to Mrs. Day; nor were promises made by him to be a proper husband if permitted to return.
It will be recalled that on March 9, 1979, the Chancery Court entered a final decree upon Ellen's bill for separate maintenance imposing upon Paul financial obligations to which he is subject to this day. A decree for separate maintenance commands the husband to resume cohabitation with his wife, or in the default thereof, to provide her suitable maintenance until there may be a reconciliation. King v. King, 246 Miss. 798, 802, 152 So.2d 889, 890-91 (1963); Tanner v. Tanner, 481 So.2d 1063, 1064 (Miss. 1985). And if the husband should, in good faith, offer to cohabit and treat the wife with conjugal kindness, the wife's right to separate maintenance ceases and would, on a proper showing to the court, be discontinued. Bunkley & Morse's Amis, § 7.06. For reconciliation to occur
it must be accepted that the appellant was honest in his intention to remedy his fault, and that his offers of reconciliation and request to return were made in good faith, with honest intention to abide thereby, and that the defendant deliberately refused his offers.
Rylee v. Rylee, 142 Miss. 832, 840-41, 108 So. 161, 163 (1926). This, of course, presents the Chancery Court with questions essentially ones of fact, and once findings have been made they will not be disturbed if we find them supported by substantial evidence.
Paul Day testified that he attempted to move back in with his wife in June, 1984. Paul also testified that he attempted to discuss an amicable reconciliation with Ellen. He never testified that he explicitly made a good faith offer, but he stated that he thought that it was understood by both parties that he was attempting to make such an offer. Ellen Day introduced several letters which she alleged that Paul had written to her immediately before and after the reconciliation attempt. Ellen contended that these letters indicated that Paul had no intention to reconcile in good faith. Instead, Ellen contended that Paul was seeking a divorce.
Paul and Ellen's youngest son, Andy Day, testified as to the attempted reconciliation. Andy went with his father to Ellen's home the day that Paul allegedly attempted to reconcile with her. He testified that his mother refused to allow his father to move back in, stating that she told him "over my dead body." The court further examined Andy regarding the reconciliation attempt, and his testimony was basically the same.
Ellen Day testified that Paul never told her that he wanted to move back in nor that he was coming home. She testified that Andy did not hear all of what was said between Ellen and Paul because he was not in the same room with them the entire time.
Based on these facts, the Chancery Court held that Paul's attempted reconciliation was not in good faith, and therefore there would be no termination of separate maintenance payments. By reason of the restricted scope of our review authority of such findings, as articulated and supported by authority in Section III above, this assignment of error must be rejected.
AFFIRMED
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.