942 So.2d 224 (2006)
Daniel Athion WATKINS, Appellant
v.
Carlene Kim (Nee: Benson) WATKINS, Appellee.
No. 2005-CA-00257-COA.
Court of Appeals of Mississippi.
May 9, 2006.
Rehearing Denied August 22, 2006.
*226 Tina Marie Dugard Scott, attorney for appellant.
Rex F. Sanderson, Houston, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On December 10, 2004, Daniel Athion Watkins was cited with a second order of contempt in the Chickasaw County Chancery Court for failure to pay child support to his wife, Carlene Kim Benson Watkins, from whom he was legally separated. The chancery court also found him in contempt for failure to pay attorney's fees and court costs, pursuant to the first order of contempt, which was entered on June 25, 2004. Aggrieved by the judgment against him, Mr. Watkins appealed. He raises the following issues for this Court's review, which we list verbatim:
1. Did the lower court err in refusing to order separate maintenance payments cease when the Wife testified under oath that she was unwilling to resume cohabitation with the Husband?
2. Should it be found that separate maintenance was just and equitable in [the case] sub judice, did the lower court err in not conducting an on the record analysis to determine the amount of separate maintenance?
2(A) Relative thereto, did the lower court err in ordering Husband to pay in excess of 75% of his modest net income as child support and separate maintenance?
3. Did the lower court err in finding Husband in willful contempt without regard to his ability or inability to pay the previously ordered amounts?

FACTS
¶ 2. Mr. Watkins and Mrs. Watkins were married on July 30, 1983. During the course of their marriage, the couple had three children. Mr. Watkins and Mrs. Watkins separated on or about July 31, 2001. At the time of their separation, the couple's oldest child was emancipated; the other children, born on October 30, 1990, and January 6, 1995, were still minors.
¶ 3. On September 23, 2003, Mrs. Watkins filed a petition for custody and other relief in the Chancery Court of Chickasaw County. A hearing was held, and on December 4, 2003, the chancery court entered a judgment for separate maintenance. The court found that Mr. Watkins should be required to provide child support, as well as medical and dental care for the children. Specifically, the court ordered Mr. Watkins to pay child support to Mrs. Watkins in the amount of $106.38 per week, and to pay $365 per month to his (Mr. Watkins's) mother for rental of both the marital home and the family minivan (a 1996 Plymouth Voyager).[1] The judgment *227 further instructed Mr. Watkins to provide and to pay all expenses of a comparable home, should Mrs. Watkins and the children be evicted from the marital home. Likewise, Mr. Watkins was required to provide Mrs. Watkins with comparable transportation, should the minivan be repossessed.
¶ 4. On March 9, 2004, Mrs. Watkins filed a complaint for contempt alleging that Mr. Watkins failed to pay the indebtedness on the marital home and the minivan, which was necessary to prevent eviction and repossession by Mr. Watkins's mother. Mrs. Watkins further alleged that Mr. Watkins repossessed the minivan, that he was using it for his own purposes, and that he substituted the minivan for the parties' older van, which was in very poor repair. Mrs. Watkins also alleged that Mr. Watkins failed to pay the phone bill and $660 in orthodontic expenses for one of the children. Additionally, Mrs. Watkins alleged that Mr. Watkins failed to timely pay the cost of piano and dance lessons for the children, and that he failed to maintain and repair the marital home.
¶ 5. A hearing was held on May 27, 2004. On June 25, 2004, the chancery court entered an order finding Mr. Watkins in contempt for failure to provide Mrs. Watkins with an adequate vehicle, and failure to provide her and the children with housing comparable to the housing that they occupied from December 2003 until May 2004. The court ordered Mr. Watkins to pay car rental in the amount of $100 per month, and housing rental in the amount of $150 per month, until he provided an adequate vehicle or housing. Mr. Watkins was also ordered to pay all utilities, all recurring orthodontic, dance and piano expenses of the minor children, and Mrs. Watkins's attorney's fees in the amount of $400.
¶ 6. On August 27, 2004, Mrs. Watkins filed a second complaint for contempt alleging that Mr. Watkins failed to pay $398.80 in child support and $400 in attorney's fees. Mrs. Watkins further alleged that Mr. Watkins failed to timely pay the water and electricity bills, as well as the telephone bill, which resulted in the disconnection of phone service to her mobile home.
¶ 7. On October 11, 2004, Mr. Watkins filed a petition to modify the previous order of the court. He argued that Mrs. Watkins's employment, acquired subsequently to the judgment for separate maintenance, which brought in a total net income in excess of $1,100 per month, constituted a material change in circumstances sufficient to warrant a modification of the separate maintenance order. Based on the parties' income, Mr. Watkins requested that the court terminate all obligations except for child support.
¶ 8. A hearing was held on November 18, 2004. On December 10, 2004, the chancery court entered an order finding Mr. Watkins in contempt for failure to pay child support, attorney's fees, and court costs. The court ordered Mr. Watkins to pay past due child support in the amount of $496.87, and prior attorney's fees in the amount $400. Mr. Watkins was also ordered to pay Mrs. Watkins's current attorney's fees in the amount of $500. The court further determined that Mr. Watkins was not entitled to a modification of the orders of the court, and that the judgment for separate maintenance would remain in full effect.
¶ 9. On December 17, 2004, Mr. Watkins filed a motion to amend and/or alter judgment; and/or for relief from previous judgment and orders. The chancery court entered an order denying the motion on January 7, 2005. The court held that Mr. Watkins's challenges to judgments filed *228 prior to December 10, 2004 were untimely, and therefore, without merit. Regarding the judgment filed on December 10, 2004, the court further determined that Mr. Watkins's motion was without merit. Aggrieved by the chancery court's decision, Mr. Watkins appealed.

STANDARD OF REVIEW
¶ 10. Our review of domestic relations matters is limited. Carrow v. Carrow, 741 So.2d 200, 202 (¶ 9) (Miss.1999). The chancellor's findings of fact will not be disturbed on appeal if they are supported by substantial credible evidence. Pacheco v. Pacheco, 770 So.2d 1007, 1009(¶ 8) (Miss. Ct.App.2000) (citing Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss.1986)). We will not reverse the decision of a chancery court unless the chancellor abused his or her discretion, was manifestly in error, or applied an erroneous legal standard. Carrow, 741 So.2d at 202(¶ 9) (citing Turpin v. Turpin, 699 So.2d 560, 564(¶ 15) (Miss. 1997)).

ISSUES AND ANALYSIS
1. Did the lower court err in refusing to order separate maintenance payments cease when the Wife testified under oath that she was unwilling to resume cohabitation with the Husband?
¶ 11. Mr. Watkins argues that the chancery court erred in finding that he did not make a good faith offer to reconcile. He argues that the ruling of the chancery court suggests that Mr. Watkins had a duty to physically attempt to enter the home in order for his reconciliation attempt to be deemed sufficient. Consequently, Mr. Watkins argues that the chancery court applied an erroneous legal standard in determining that the judgment of separate maintenance should not be terminated.
¶ 12. "A decree for separate maintenance commands the husband to resume cohabitation with his wife, or in default thereof, to provide her suitable maintenance until there may be a reconciliation." Day v. Day, 501 So.2d 353, 357 (Miss.1987) (citing Tanner v. Tanner, 481 So.2d 1063, 1064 (Miss.1985); King v. King, 246 Miss. 798, 802, 152 So.2d 889, 890-91 (1963)). The wife's right to separate maintenance terminates if the husband makes an offer, in good faith, "to cohabit and treat the wife with conjugal kindness." Id. (citing J.W. Bunkley & W.E. Morse, Amis on Divorce and Separation in Mississippi, § 7.06 (2d ed. 1957)).
¶ 13. In Day, the husband presented evidence that his wife refused his offer of reconciliation with the words: "over my dead body." Id. The wife testified that the husband had no intention to reconcile, and that he was seeking a divorce. Id. The chancery court determined that the husband's request to be allowed to come home did not constitute a good faith offer to resume a proper marital relationship, as he expressed neither regret nor repentance, nor promised to be a proper husband if permitted to return. Id. The Supreme Court of Mississippi found that the chancery court's findings were supported by substantial evidence. Id.
¶ 14. During the November 18, 2004 hearing, Mr. Watkins testified that Mrs. Watkins refused his offer to move back home. His alleged offer consisted of the following statement: "you don't want me moving back in." Mr. Watkins conceded, however, that this exchange took place during a discussion about settling a divorce. Mrs. Watkins echoed this concession during redirect examination, explaining that Mr. Watkins came to her house and asked if she had gotten his proposal regarding a divorce settlement agreement. *229 She further testified that she was not aware that they were having a discussion about getting back together, and that Mr. Watkins was living with his girlfriend at the time of the exchange.
¶ 15. Based on these facts, the chancery court determined that there would be no termination of separate maintenance because Mr. Watkins did not make a good faith offer to reconcile. We find that there is substantial evidence to support the chancery court's finding. Similar to the husband in Day, Mr. Watkins was seeking a divorce, and he expressed neither regret nor repentance during his alleged offer to reconcile. Therefore, this issue is without merit.
2. Should it be found that separate maintenance was just and equitable in [the case] sub judice, did the lower court err in not conducting an on the record analysis to determine the amount of separate maintenance?
2(A) Relative thereto, did the lower court err in ordering Husband to pay in excess of 75% of his modest net income as child support and separate maintenance?
¶ 16. Mr. Watkins urges this Court to determine whether the chancellor erred when she entered the original judgment of separate maintenance without including written findings that the amount of support ordered was just and equitable. Rule 4(a) of the Mississippi Rules of Appellate Procedure requires that notice of appeal "be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from." Because Mr. Watkins did not appeal the original judgment of separate maintenance, we do not have jurisdiction to review it. We do have jurisdiction, however, to review the judgment entered on December 10, 2004. Rule 4(d) of the Mississippi Rules of Appellate Procedure provides that, if a party timely files a motion to alter or amend the judgment, "the time for appeal for all parties runs from the entry of the order disposing of the . . . motion." Mr. Watkins timely filed his motion to amend within ten days of entry of judgment, on December 17, 2004. The court disposed of his motion on January 7, 2005, and Mr. Watkins timely filed his notice of appeal on January 31, 2005. Therefore, we may review the December 10 judgment to determine whether the denial of modification of separate maintenance was supported by substantial evidence.
¶ 17. In order for Mr. Watkins to obtain a modification of the separate maintenance order, he must show that there has been a material or substantial change of circumstances since the order was entered. Kennedy v. Kennedy, 650 So.2d 1362, 1367 (Miss.1995) (citing Landrum v. Landrum, 498 So.2d 1229, 1230 (Miss. 1986)). Mr. Watkins did not allege a material or substantial change of circumstances in his motion to amend and/or alter judgment; and/or for relief from previous judgment and orders, which was filed on December 17, nor does he do so in his brief to this Court. Nonetheless, we have reviewed the record for evidence of a material or substantial change of circumstances, and we have not found evidence sufficient to conclude that the chancellor erred in ordering that the judgment of separate maintenance remain in effect.
¶ 18. In 2003, at the time of the hearing for separate maintenance, Mr. Watkins was a truck driver for Chickasaw Wood in Houston, Mississippi. His adjusted gross income was $2,241.50 per month. Subsequent to that hearing, Mr. Watkins left Chickasaw Wood and took a job working in the factory of Franklin Corporation (Franklin). Although his financial declaration *230 for the May 27, 2004 hearing reflected that his adjusted gross income had decreased to $1,566.02 per month, Mr. Watkins testified that he had received two raises since completing that financial declaration. By the time of the November 18, 2004 hearing, Mr. Watkins's adjusted gross income had increased to $1,843.39 per month. During the hearing, Mr. Watkins testified that his gross pay was $20 less per week, but that his job with Franklin provided him with medical and dental insurance, unlike his job with Chickasaw Wood.
¶ 19. In Riley v. Riley, 884 So.2d 791, 794(¶ 13) (Miss.2004), the Mississippi Supreme Court upheld the chancellor's determination that a decrease in gross pay of $100 per month, coupled with a slight increase in expenses, was not a material or substantial change to warrant the modification of child support. Unlike the circumstances in Riley, although Mr. Watkins's income decreased since the entry of the judgment for separate maintenance, his expenses did not increase. Mr. Watkins was originally ordered to pay $365 per month for rent of the marital home and minivan. When Mrs. Watkins was evicted from the marital home and her minivan was repossessed, she began renting a trailer for $150 per month and a car for $100 per month. Although the court found Mr. Watkins in contempt and ordered him to find comparable housing and transportation for his wife and children, it also lowered his rental payments to $250 per month. Thus, the facts in case sub judice present even less evidence of a material or substantial change of circumstances than did the facts in Riley. Consequently, we are not persuaded that the chancellor abused her discretion, was manifestly in error, or applied an erroneous legal standard. This issue is without merit.
3. Did the lower court err in finding Husband in willful contempt without regard to his ability or inability to pay the previously ordered amounts?
¶ 20. In a contempt action for failure to pay child support, when the party entitled to receive support introduces evidence that the party required to pay has failed to do so, a prima facie case of contempt has been established. McIntosh v. Department of Human Services, 886 So.2d 721, 724(¶ 11) (Miss.2004) (citing Guthrie v. Guthrie, 537 So.2d 886, 888 (Miss.1989)). Accordingly, the burden shifts to the paying party to show an inability to pay, or other defense, by clear and convincing evidence. Id. (citing Shelton v. Shelton, 653 So.2d 283, 286-87 (Miss. 1995)). The chancellor has substantial discretion to determine whether a party is in contempt. Id. at 725. Furthermore, we will not reverse the chancellor's decision unless it is manifestly erroneous. Id. (citing Premeaux v. Smith, 569 So.2d 681, 683 (Miss.1990)).
¶ 21. Mr. Watkins argues that, due to his inability to pay, it was inequitable for the chancery court to cite him for contempt for his failure to pay child support, attorney's fees, and courts costs. In support of his position, Mr. Watkins cites Davis v. Davis, 268 So.2d 913, 916 (Miss. 1972), and asserts that he "would have to be a financial genius or a magician in order to comply with [the judgment of separate maintenance]." The circumstances in Davis are distinguishable from those of the case sub judice.
¶ 22. In Davis, the chancery court entered a divorce decree on July 3, 1971, requiring the husband to pay certain accounts of family debt, in addition to periodic alimony, child support, and attorney's fees. Id. at 914. In July of 1971, the wife *231 filed a petition to find the husband in contempt for his failure to pay the accounts of family debt, although no time period had been set for him to pay those accounts. Id. The husband responded with a petition to modify the alimony and other payments, but the chancery court found no material change in circumstances and declined to modify the divorce decree. Id. The court entered a decree in the contempt proceedings on August 24, 1971, which ordered the husband to pay $85 per month toward satisfaction of the accounts in question, and instructed him that failure to do so would result in citation for contempt. Id. at 915. The Mississippi Supreme Court affirmed the chancery court's denial of modification of the divorce decree, but reversed its ruling on contempt. Id. at 916 The supreme court found that ordering the husband to pay $85 per month toward the satisfaction of the accounts was inequitable, as he earned only $550 per month and was required to pay $465 in alimony and support. Id. at 915. The supreme court further determined that the chancery court erred in attempting to find the husband in contempt "prior to proof that he had willfully violated the provisions of the decree of August 24." Id. at 916.
¶ 23. Unlike the husband in Davis, Mr. Watkins was not cited for contempt for failure to pay accounts of marital debt; he was cited for contempt for failure to pay child support, and for failure to pay attorney's fees and court costs that Mrs. Watkins incurred during the first contempt proceedings. Mr. Watkins's child support obligations amounted to $106.38 per week and, at the time of the November 18, 2004 hearing, his adjusted gross income was $1,843.39 per month. This hardly rises to the level of inequity in Davis, where the contempt order left the husband with nothing on which to live. Moreover, Mr. Watkins has failed to show inability to pay by clear and convincing evidence. Thus, we conclude that the chancery court did not err in citing Mr. Watkins with contempt. This issue is without merit.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF CHICKASAW COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR.
NOTES
[1] Mr. Watkins's mother owned the marital home and the minivan used by Mrs. Watkins and the children.