ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Edgar L. McDonald Jr. (Ed) unsuccessfully attempted to divorce his wife, Cynthia Jean Guess McDonald (Cindy). Instead, the Clay County Chancery Court granted Cindy’s request for separate maintenance. Less than two weeks later, Ed attempted to terminate his separate-maintenance obligation, but the chancery court denied Ed’s motion. Ed then attempted to terminate his separate-maintenance obligation again — this time via his motion to alter or amend the order denying his motion to terminate separate maintenance. Cindy responded by requesting that Ed be held in contempt for failing to pay her separate maintenance. The chancellor denied Ed’s motion to alter or amend his previous order and granted Cindy’s request that Ed be held in contempt. Accordingly, the chancellor awarded Cindy a judgment of $6,000. The chancellor also awarded Cindy $1,000 in attorney’s fees. Aggrieved, Ed appeals. Finding no error, we affirm.
 

 
 *63
 
 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. After approximately thirty years of marriage, Ed filed a complaint for divorce based on habitual cruel and inhuman treatment. Cindy responded and filed a counterclaim for separate maintenance. The chancellor ultimately found that Ed had failed to demonstrate that he was entitled to a divorce, but Cindy was entitled to separate maintenance. Consequently, the chancellor ordered Ed to pay Cindy separate maintenance in the amount of $1,000 per month in addition to the monthly mortgage on the marital home and Cindy’s car payment. Ed’s total monthly separate-maintenance obligation is approximately $3,200. The chancellor entered his final decree on April 17, 2009.
 

 ¶ 3. Thirteen days after the chancellor had entered his final decree, Ed filed a motion to terminate his separate maintenance obligation to Cindy. Within his motion, Ed claimed that he had “made a good faith effort to return to the marriage and amend the marital relationship.” However, Cindy’s response was in opposition to Ed’s motion. On May 19, 2009, the chancellor heard Ed’s motion to terminate separate maintenance. Testimony during the hearing revealed that Ed had only moved some of his things back into the marital home at approximately 10:00 p.m. the night before the hearing. On June 17, 2009, the chancellor filed his order. The chancellor found that Ed’s motivation was “solely to avoid making the Court ordered payments and not to truly resume a normal and healthy marital relationship.” According to the chancellor, Ed’s “filing of [his] motion so soon after the entrance of the order of separate maintenance ... and his return to the marital home on the eve of the hearing may have been premature.” The chancellor’s order will be discussed in greater detail in the analysis portion of this opinion.
 

 ¶ 4. On July 20, 2009, Ed filed a motion to alter or amend the chancellor’s order denying Ed’s motion to terminate separate maintenance. Four days later, Cindy filed a “complaint for citation for contempt of court and other relief.” Among other things, Cindy claimed that Ed had not paid her $l,000-per-month separate-maintenance payment since May 2009. On October 26, 2009, the chancellor heard Ed’s motion and Cindy’s “complaint for citation for contempt.”
 
 [1]
 
 The chancellor later denied Ed’s motion and granted Cindy’s request that Ed be held in contempt. In so doing, the chancellor’s order specifically found:
 

 Both parties testified and it appears from the testimony that there has been no reconciliation sufficient to allow this Court to terminate the former separate[-]maintenance order. The parties have not resumed the marital relationship and continue to live separate and apart in the homestead. [Ed] has spend nights at the marital homestead, but there is no proof that these were with [Cindy] in a marital relationship as cohabitation. Further, [Ed] testified that his job had changed and that he had to travel quite a bit. This also would by its very nature be problematic to a continuous resumption of normal marital relations. In addition, there was no proof that the parties had discussed a reconciliation, had begun the normal activities of a marriage such as cohabitation, eating
 
 *64
 
 meals together, time with each other, movies, dates, trips, marriage counseling or pastoral visits, church attendance or any other activity of such nature as to justify termination of the former separate[-]maintenance order.
 

 It was clear to the Court that [Cindy] heard the name of the woman [Ed] had an alleged affair with for the first time at this hearing. There was no proof that they had even discussed this nor made any attempt to work out the problems before the latest hearing. [Ed] was critical of [Cindy] for changing her address and taking a cruise. He also noted that she had changed the security code and would not communicate it to him. [Cindy]’s explanation for the change of address was plausible, as was the cruise details. Further, as a co-owner of the house, [Ed] has as much right to access as [Cindy] and it does not seem that this would reasonably inhibit the resumption of the marriage. [Cindy] is certainly fee to take a cruise, as her ability to pay for it (she testified her sister paid the bill) is not material to the issue at hand. If the proof showed that [Cindy] was purposefully stonewalling or avoiding [Ed] merely to continue payments, the Court could take appropriate action to punish her for bad faith.
 

 As stated in the prior [o]rder that refused to terminate the separate[-]maintenance order, the burden is on [Ed] to develop the proof of good faith and honesty. [Ed] had very little proof that were any different facts than those of the prior hearing and once more seemed more concerned with the financial issues than reconciliation. It is not the purpose of this Court to punish anyone other than in contempt actions. The premise of separate maintenance is a simple one and that is to order the husband to resume cohabitation with his wife, and by failing to do so, to provide suitable maintenance to her until they are reconciled.
 
 Lynch v. Lynch,
 
 616 So.2d 294 (Miss.1993). If there is reconciliation by the offer of cohabitation and the treatment of the wife with conjugal kindness in good faith, the [o]rder should be terminated.
 
 Day v. Day,
 
 501 So.2d 353 (Miss.1987). This standard was set forth in the prior order refusing to terminate the original order of separate maintenance. Therefore, until there has been such compliance with existing law, the Court is without authority to terminate the separate[-]maintenance order.
 

 Turning now to [Cindy]’s request for a contempt of court order, the proof showed that [Ed] had not made the monthly separate[-]maintenance payments in the amount of $1,000 for the six months preceding the hearing. This ar-rearage would therefore total $6,000.00. [Ed] did not offer any testimony to counter this allegation nor any proof of payment. He did not offer any reason why he is or was unable to pay the amount ordered by the Court. Therefore, the Court must find him in contempt and enter judgment against [Ed] and in favor of [Cindy] in the amount of $6,000.00. The same shall bear interest at the rate of eight percent (8%) per annum.
 

 ¶ 5. On November 10, 2009, Ed filed a motion to alter or amend the judgment. The chancellor denied Ed’s motion. Ed appeals.
 

 STANDARD OF REVIEW
 

 ¶ 6. Our standard of review is well-settled. “We review domestic-relations matters under the limited substantial-evidence/manifest-error rule. A chancellor’s findings will not be disturbed on appeal when supported by credible evidence and not manifestly wrong.”
 
 Diehl v. Diehl,
 
 29
 
 *65
 
 So.3d 158, 156 (¶ 14) (Miss.Ct.App.2010) (internal citations omitted).
 

 ANALYSIS
 

 I. SEPARATE MAINTENANCE
 

 ¶ 7. Ed claims the chancellor erred when he refused to terminate the separate-maintenance obligation. According to Ed, the chancellor placed undue emphasis on Ed’s financial motivation for returning to the marital home. Ed concedes that curtailing his living expenses was one of his motives for returning to Cindy. However, Ed goes on to state that his “primary purpose was to cohabit with Cindy as required by law.”
 

 ¶ 8. “Separate maintenance is a court-created remedy.”
 
 Diehl,
 
 29 So.3d at 157 (¶ 16). “A decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance for her until such time as they may be reconciled to each other.”
 
 Id.
 
 (quoting
 
 Thompson v. Thompson,
 
 527 So.2d 617, 621 (Miss.1988)). “The purpose of the award is to provide, as nearly as may be possible, the same sort of normal support and maintenance for the wife, all things considered, as she would have received in the home, if the parties had continued normal cohabitation.”
 
 Id.
 
 (citation and quotations omitted).
 

 ¶ 9. As stated previously, Ed claims the chancellor erred when he denied Ed’s motion to terminate the separate-maintenance obligation. “[I]f the husband should, in good faith, offer to cohabit and treat the wife with conjugal kindness, the wife’s right to separate maintenance ceases and would, on a proper showing to the court, be discontinued.”
 
 Day v. Day,
 
 501 So.2d 353, 357 (Miss.1987) (citation omitted). “For reconciliation to occur ‘it must be accepted that the appellant was honest in his intention to remedy his fault, and that his offers of reconciliation and request to return were made in good faith, with honest intention to abide thereby, and that the defendant deliberately refused his offers.’”
 
 Id.
 
 (quoting
 
 Rylee v. Rylee,
 
 142 Miss. 832, 840-41, 108 So. 161, 163 (1926)). These issues are “essentially” questions of fact, which this Court shall not disturb so long as they are supported by substantial evidence.
 
 Id.
 

 ¶ 10. Ed initially moved to terminate the monthly separate-maintenance obligation less than two weeks after the chancellor had entered the final judgment ordering Ed to begin paying monthly separate maintenance to Cindy. In the chancellor’s order denying Ed’s motion to terminate the separate-maintenance obligation, the chancellor found:
 

 The question of whether ... Ed’s effort was one of good faith and honest is of a factual nature and must be decided by this Court on the basis of the facts as developed in the courtroom. At no time has there been any testimony that in any way could be construed that Cindy would not welcome Ed back or resume the marital relationship and bed. Her only request in the testimony is that Ed make a clean breast of his past relationships, if any. Ed has never denied any relationship under oath, but [he] has asserted his Fifth Amendment right against self-incrimination. Ed did testify that he wanted to move on and did not want to discuss the past. The Court can certainly understand Ed’s desire not to address the past for obvious reasons. However, to resume a relationship after thirty (30) plus years of marriage, as this one is, there has to be a foundation of complete trust. A marriage which has never lost the trust factor may be strong because there has never been any reason to doubt. A marriage which has
 
 *66
 
 lost the trust factor must be repaired and shored up with an extraordinary amount of reassurance, openness, and certainly frankness.
 

 Ed’s reluctance to engage in such discussions cast doubt in the Court’s mind as to whether he will ever make the effort necessary to resume a proper marital relationship. As in
 
 Day,
 
 ... Ed never once expressed regret or repentance, nor were there promises made to be a proper husband if allowed to return. This combined with Ed’s reluctance to do what it took to satisfy Cindy leads the Court to the only conclusion possible; that is, Ed’s motivation is solely to avoid making the [c]ourt[-]ordered payments and not to truly resume a normal and healthy marital relationship. The Court also would state that the filing of the motion so soon after the entrance of the order of separate maintenance ... and his return to the marital home on the eve of the hearing may have been premature. A few days is hardly enough time to restore a thirty (30) year marriage. The Court only had evidence that Ed dropped off his bags and that was basically it. Without more, the Court cannot grant the motion by law.
 

 ¶ 11. According to Ed, he refused to tell Cindy the names of any women with whom he had had affairs because “[t]here is ... no requirement that either party waive his or her Fifth Amendment rights in order to restart the relationship.” Ed based his refusal to disclose the names of his “alleged paramours” on the concept that “adultery is still a punishable crime in Mississippi.”
 
 [2]
 

 ¶ 12. Nonetheless, during the hearing on Ed’s second motion to terminate the separate-maintenance obligation, Ed disclosed the name of a woman with whom he had been involved. In the chancellor’s October 26, 2009 order denying Ed’s second motion to terminate the separate-maintenance obligation, the chancellor held as follows:
 

 It was clear to the Court that [Cindy] heard the name of the woman [Ed] had an alleged affair with for the first time at this hearing. There was no proof that they had even discussed this nor made any attempt to work out the problems before the latest hearing.... As stated in the prior [o]rder that refused to terminate the separate maintenance order, the burden is on [Ed] to develop the proof of good faith and honesty. [Ed] had very little proof that were any different facts than those of the prior hearing and once more seemed more concerned with the financial issues than reconciliation.
 

 ¶ 13. Finally, it is noteworthy that Ed initially attempted to resume cohabitation by moving some of his things back into an apartment attached to the marital home at approximately 10:00 p.m. the night before the hearing on his motion to terminate the
 
 *67
 
 separate-maintenance obligation. Ed’s “attempt to resume cohabitation was showing up on a Sunday night at 10:00 p.m. (the night before [the][h]earing on Monday morning) demanding to be allowed to move his stuff back into the marital domicile. One acting under this time frame and the circumstances that attend such does not equal good faith on his part.” Once again, we revisit the following language from the chancellor’s order denying Ed’s motion to terminate separate maintenance:
 

 Ed arrived at the house on a Sunday night around 10[:00] p.m. and brought some overnight items. He did not move into the marital bedroom, but chose to stay in the apartment which is part of the marital residence. His testimony was that he had attempted to talk with Cindy about moving back in on several occasions, even offering to meet her for lunch. Ed also testified that he did not have a key or the code to the security system to the house, and therefore, was not able to have free access to the home and the resulting ability to move back in completely. In contrast, Cindy testified that Ed had not resumed a conjugal marital relationship and had not been honest with her in revealing any extra[-]marital relationships. On cross[-]examination, Ed refused to reveal any further information concerning Cindy’s allegations of extra[-]martial affair(s) despite being questioned about it several times.
 

 The Mississippi Supreme Court held in the case of
 
 Day, ibid.,
 
 that any attempt at reconciliation must be in good faith and honest in the husband’s intention to remedy his fault. There is no question that Cindy has a duty to not “block” the door and to meet Ed halfway if his efforts are made in good faith. Cindy should have done whatever was necessary to provide Ed with a key and the code to the security system immediately upon his request. She should have also mét with him or at least returned his calls to ostensibly discuss the reconciliation. In this, she is not without some degree of fault. However, it must be remembered that she is not the party upon whom the burden of reconciliation and good faith rests. That burden rests with Ed.
 

 ¶ 14. Within the bounds of the previously mentioned standard of review, we conclude that the chancellor was not manifestly wrong when he found that Ed did not seek to resume cohabitation in good faith. The chancellor heard testimony that Ed had refused to entertain Cindy’s questions regarding Ed’s extra-marital affairs. It was only during the hearing on Ed’s second motion to terminate separate maintenance that Ed finally revealed the name of a paramour. It was not unreasonable for the chancellor to conclude that,' by declining to discuss openly any lingering issues regarding his capacity for fidelity, Ed had not made a good-faith attempt to resume cohabitation and his marital relationship with Cindy. Suffice it to say that a marriage requires more than simple cohabitation. Accordingly, we find that the chancellor did not abuse his discretion when he denied Ed’s requests to the terminate separate-maintenance obligation. It follows that we find no merit to this issue.
 

 II. CONTEMPT
 

 ¶ 15. Ed claims the chancellor erred when he held him in contempt. Ed’s entire argument under this heading is as follows:
 

 In the [ojrder of November 10, 2009, the [cjhancellor held [Ed] in contempt for non-payment of monthly support and awarded $1,000.00 [in] attorneyfs] fees. In his Motion to Terminate Separate Maintenance, however, [Ed] had asked that the payment be stayed pending the
 
 *68
 
 hearing. With his request for a stay pending, [Ed] cannot be held in contempt, since the [Chancellor’s decision is flawed and should be reversed on the basis set forth in
 
 Chapel, Townsend,
 
 [and]
 
 McBride,
 
 supra.
 

 However, Ed also filed a reply brief. Ed did not substantially expand on his initial argument. That is, Ed reiterated his position that he should not have been held in contempt because he filed his motion to terminate the separate maintenance two days before his first payment was due. However, Ed also argued that the chancellor erred in awarding Cindy $1,000 in attorney’s fees because Cindy was able to pay for her own attorney.
 

 ¶ 16. Ed references
 
 Chapel v. Chapel,
 
 876 So.2d 290 (Miss.2004),
 
 Townsend v. Townsend,
 
 859 So.2d 370 (Miss.2003), and
 
 McBride v. Jones,
 
 803 So.2d 1168 (Miss. 2002). However, none of those cases pertains to a decision to find a litigant in contempt. What is more, none of those cases address Ed’s claim that a request to stay an obligation to pay the separate-maintenance payments operates in the same manner as an actual stay. Because Ed failed to cite relevant authority to support his argument on appeal, this issue is procedurally barred. M.R.A.P. 28(a)(6).
 

 ¶ 17. Cindy requests that this Court award her “attorneyfs] fees for having to answer and defend herself in regard[s] to the appeal filed by” Ed. We have generally awarded attorney’s fees on appeal in the amount of one-half of what was awarded in the lower court.
 
 Monroe v. Monroe,
 
 745 So.2d 249, 253 (¶ 17) (Miss. 1999). Attorney’s fees are based upon necessity rather than entitlement.
 
 Id.
 
 In awarding attorney’s fees to Cindy, the chancellor stated as follows:
 

 The finding of contempt in this matter as to [the] separate[-]maintenance payments permits the Court to require the party in contempt to pay reasonable attorney’s fees to the innocent party. The award is based on the contempt and not the ability to pay. Therefore, the Court orders [Ed] to pay the sum of $1,000.00 to [Cindy] as attorney’s fees for his failure to pay the monthly separate[-]maintenance support as ordered by this Court.
 

 The chancellor specifically held that the attorney’s fees awarded to Cindy are based on the fact that Ed was in contempt “and not the ability to pay.” Because precedent dictates that attorney’s fees are based on “necessity rather than entitlement,” and the chancellor did not find that the attorney’s fees awarded to Cindy were based on an inability to pay her attorney, we decline to award Cindy any attorney’s fees on appeal.
 

 ¶ 18. THE JUDGMENT OF THE CLAY COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.
 

 [1]
 

 . While the chancellor was taking up preliminary matters, Ed's attorney requested that the chancellor allow him to "amend or[e] tenus the motion under Rule 59 [of the Mississippi Rules of Civil Procedure] for leave to amend to include the acts that have happened subsequent to the court hearing [Ed's initial motion to terminate separate maintenance]. Cindy's attorney did not oppose Ed’s request.
 

 [2]
 

 . We decline to address the question of whether Ed could have successfully been prosecuted for adultery pursuant to Mississippi Code Annotated section 97-29-1 (Rev. 2006), which sets forth as follows:
 

 If any man and woman shall unlawfully cohabit, whether in adultery or fornication, they shall be fined in any sum not more than five hundred dollars each, and imprisoned in the county jail not more than six months; and it shall not be necessary, to constitute the offense, that the parties shall dwell together publicly as husband and wife, but it may be proved by circumstances which show habitual sexual intercourse.
 

 Furthermore, we decline to address the question of whether Ed could have privately disclosed any extra-marital affairs to Cindy under the protection of the "Husband-Wife Privilege” set forth in Mississippi Rule of Evidence 504.