■GUIDRY, J.
 

 |2In this medical malpractice action, plaintiffs, Carmel Knight, Cynthia Knight, and Dwayne Knight,
 
 [1]
 
 appeal from judgments of the trial court dismissing their claims against Raymond Clay Gould, M.D., with prejudice and denying their motion for judgment notwithstanding the verdict. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 In 2000, Philip Knight, a sixty-eight-year-old male, was diagnosed with lymphoma of his right tonsil. After undergoing chemotherapy, Mr. Knight was referred to Dr. Gould, a radiation oncologist, for radiation therapy. Mr. Knight met with Dr. Gould on November 16 and 24, 2000, to discuss patient history and to plan therapy. At this time, Mr. Knight signed a consent form detailing the risks and complications of radiation therapy to the head and neck region, which risks included reduced saliva, loss of taste, dry mouth, and tooth decay and gum changes requiring daily fluoride use. During these meetings, Mr. Knight also indicated that he was seeing a dentist, and that his dentist was
 
 *160
 
 aware that he was going to undergo radiation therapy.
 

 Thereafter, Mr. Knight underwent radiation therapy with Dr. Gould from November 27, 2000, to December 20, 2000, receiving 3,000 centi-gray of radiation to the left tonsil and 3,600 centi-gray of radiation to the right tonsil. On January 5, 2001, Mr. Knight saw his dentist, Lance Babin, D.D.S., complaining of dry mouth. Dr. Babin put him on Peridex, a prescription antibacterial mouth rinse, and fluoride gel and scheduled Mr. Knight to return to his office in three months. On January 18, 2001, Mr. Knight returned to Dr. Gould for his post-radiation follow-up and informed. Dr. Gould he was experiencing dry mouth. Mr. Knight returned for his |slast visit with Dr. Gould on April 23, 2001, and to Dr. Babin on April 27, 2001, wherein he informed both doctors that he was still experiencing dry mouth. Dr. Babin reinforced oral hygiene and made sure Mr. Knight was still using the Peridex and fluoride. Unfortunately, Mr. Knight began to experience rampant tooth decay and ultimately had to have all of his teeth extracted.
 

 Thereafter, Mr. Knight and his wife, Carmel Knight, filed a complaint with the Louisiana Patient’s Compensation Fund against Dr. Gould. A medical review panel was convened and rendered an opinion on November 29, 2004, finding that the evidence did not support the conclusion that Dr. Gould failed to meet the applicable standard of care. Specifically, the panel concluded that “[t]he medical records show that [Mr. Knight] signed the informed consent on. November 24, 2000 which informed the patient that ‘tooth decay and gum changes requiring daily fluoride use’ are possible side effects of radiation.”
 

 On January 21, 2005, the Knights filed a petition for damages against Dr. Gould, asserting that Dr. Gould was negligent in: 1) failing to obtain a dental consult prior to the commencement of radiation therapy, 2) failing to provide for and recommend that Mr. Knight have fluoride trays for the permanent application of fluoride, and 3) failing to take the appropriate prophylactic measures upon diagnosing dry mouth (xer-ostomia) after radiation was complete.
 

 Following a jury trial on October 14, 15, and 16, 2009, the jury returned a verdict in favor of Dr. Gould, finding that the plaintiffs did not adequately prove the standard of care applicable to Dr. Gould regarding his medical treatment of Mr. Knight in this case. On November 5, 2009, the trial court signed a judgment in conformity with the jury’s verdict, dismissing all of the plaintiffs’ claims against Dr. Gould with prejudice. On November 20, 2009, the plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV), asserting that the jury’s verdict should be set aside, because the applicable standard of care was repeated by all five Lradiation oncologist experts who testified. According to the plaintiffs, these experts established the following standards of care: 1) pre-treatment dental evaluation, including the patient being fitted for fluoride trays, 2) communication with the dentist, and 3) responding to the complication of dry mouth when it arose. Plaintiffs averred that the underlying purpose of these standards is to ensure that the patient is on fluoride trays in order to prevent dry mouth induced cavities.
 

 Following a hearing on the plaintiffs’ motion, the trial court signed a judgment denying the motion for JNOV. Plaintiffs now appeal from the judgments dismissing their claims and denying the motion for JNOV.
 

 DISCUSSION
 

 In order to prevail in a medical • malpractice action, a plaintiff is required to
 
 *161
 
 establish: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale under similar circumstances; and where the defendant practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved medical specialty; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and (3) that as a proximate result of this lack of knowledge or skill or failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred.
 
 See
 
 La. R.S. 9:2794(A);
 
 Lieux v. Mitchell,
 
 060382, pp. 10-11 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314,
 
 writ denied,
 
 070905 (La.6/15/07), 958 So.2d 1199. In other words, the plaintiff must establish the standard of care applicable to the doctor, a breach of that standard of care, and that the substandard care caused an injury the plaintiff would otherwise not have | ¡¡suffered.
 
 Thibodaux v. Leonard J. Chabert Medical Center,
 
 06-0599, p. 4 (La. App. 1st Cir.9/14/07), 981 So.2d 686, 689,
 
 writ denied,
 
 07-2039 (La.12/7/07), 969 So.2d 640.
 

 It is well settled that the resolution of each of these inquiries involves a determination of fact, which should not be reversed on appeal absent manifest error.
 
 Bradbury v. Thomas,
 
 98-1678, p. 8 (La. App. 1st Cir.9/24/99), 757 So.2d 666, 673. Accordingly, if the jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Arceneaux v. Domingue,
 
 365 So.2d 1330 (La.1978). Furthermore, where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Rose11 v. ESCO,
 
 549 So.2d 840, 844 (La. 1989).
 

 In medical malpractice actions, opinions from medical experts are necessary to determine both the applicable standard of care and whether that standard was breached.
 
 Thibodaux,
 
 06-0599 at pp. 4-5, 981 So.2d at 689. When medical experts are called to testify, the views of such expert witnesses are persuasive, although not controlling, and any weight assigned to their testimony by the trier of fact is dependent upon the facts on which the opinion is based as well as the expert’s qualifications and experience.
 
 Bradbury,
 
 98-1678 at p. 8, 757 So.2d at 673. The trier of fact must assess the testimony and credibility of all the witnesses and make factual determinations regarding these evaluations.
 
 Bradbury,
 
 98-1678 at p. 8, 757 So.2d at 673.
 

 When the experts’ opinions are in conflict concerning the standard of care applicable to a case, the reviewing court will give great deference to the conclusions of the finder of fact.
 
 See Serigne v. Ivker,
 
 00-0758, p. 6 (La.App. 4th Cir.1/23/02), 808 So.2d 783, 787-788. The issue to be resolved on appeal is not | ¡¡whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one.
 
 Stobart v. State, Department of Transportation and Development,
 
 617 So.2d 880, 882 (La.1993).
 

 In the instant case, the jury was presented with special jury interrogatories, in which the first question required them to decide if “the plaintiffs adequately proved the standard of care applicable to Dr. Clay
 
 *162
 
 Gould regarding his medical treatment of Mr. Philip Knight in this ease[.]” The jury’s response was “No.”
 

 At the outset, we note that plaintiffs assert on appeal that they presented unanimous expert testimony that the standard of care for a radiation oncologist is to ensure the use of fluoride trays to treat a patient with dry mouth. This standard is somewhat more simplified than that presented to the jury, and to the trial court in the motion for JNOV. Rather, the plaintiffs suggested to the jury and to the trial court that the standards of care applicable in the instant case were: 1) pre-treatment dental evaluation/clearance, including the patient being fitted for fluoride trays, 2) communication with the dentist, and 3) responding to the complication of dry mouth when it arose. According to the plaintiffs, the underlying purpose of these standards is to ensure that the patient is on fluoride trays in order to prevent dry mouth induced cavities.
 

 Regardless of how narrowly or how broadly we view the alleged standard of care, we find, based on our review of the record, that the jury was not unreasonable in concluding that plaintiffs failed to prove the applicable standard of care.
 

 At trial, five experts in the field of radiation oncology testified. Plaintiffs’ expert, Dr. Randy Heysek, stated that the standard of care required an assessment of the integrity of the teeth and a referral of the patient to a dentist for a pre-radiation dental evaluation. According to Dr. Hey-sek, one of the purposes of this evaluation is for the patient to be fitted for fluoride trays. Dr. Heysek was then |7asked to review a copy of a page from a radiation oncology textbook, which he recognized as an authoritative text on radiation oncology and which provided:
 

 It is the obligation of the radiation oncologist that a patient be seen by a dentist who, preferably, has experience with the effects of radiation on the oral cavity. Before simulation, patients are evaluated for caries, infections, impacted teeth, and periodontal status. A prescription fluoride rinse or gel used with carriers or trays made at the time of evaluation is to be used by the patients for the remainder of his or her life. The patient should also have routine followup appointments with the dentist after completion of radiation therapy.
 

 Dr. Heysek stated that this textbook articulates the standard of care for a radiation oncologist under these circumstances, and according to Dr. Heysek, mandates the use of fluoride trays. Dr. Heysek stated that the standard of care requires the radiation oncologist to make sure the dentist is using the fluoride trays, and that it is not up to the dentist to decide on the appropriate prophylaxis. Dr. Heysek stated that in his practice, he instructs the dentist to make the fluoride trays and to use fluoride before, during, and after radiation therapy. However, Dr. Heysek did acknowledge that some radiation oncologists will just refer patients to a dentist for routine prophylaxis.
 

 Dr. Paul. Monsour, a member of the medical review panel, stated that prior to treatment, he ensures that a patient is being seen by a dentist to do a dental evaluation to make sure that there are no problems with the patient’s teeth, and to ensure that in the event the patient develops dry mouth, there is good prophylaxis, i.e., fluoride treatment, trays, washes, rinses, etc. According to Dr. Monsour, it is the standard of care to get a pre-radiation dental evaluation. Further, Dr. Monsour stated that the standard of care requires him, as a radiation oncologist, to communicate with the dentist about prophylaxis. Dr. Monsour stated that he does not talk about fluoride trays all of the time, be
 
 *163
 
 cause there are other ways to do it, and ultimately, it is the dentist’s decision as to what is the appropriate prophylaxis. Finally, Dr. Monsour stated that it is not the radiation oncologist’s | ¿responsibility to treat or manage complications such as dry mouth, but rather, it is the dentist’s responsibility, because there is nothing that a radiation oncologist knows or can do to manage dry mouth once it occurs.
 

 The deposition of Dr. Lucien Nedzi, also a member of the medical review panel, was read to the jury. Dr. Nedzi agreed that it is the obligation of a radiation oncologist to make sure that the patient is seen by a dentist and that the standard of care requires a dentist to evaluate the patient and assess the integrity of the teeth, especially with regard to the necessity of any dental extractions if high doses of radiation are going to be delivered. According to Dr. Nedzi, the main issue before radiation is whether the teeth need to be extracted. Additionally, the standard of care includes ensuring that a patient receives appropriate follow-up with a dentist or referral for any complications that may come up as a result of the radiation. Dr. Nedzi stated that most radiation oncologists in the community would make sure the patient is receiving fluoride treatment, which in his practice is done by asking the patient. However, he stated it is ultimately the patient’s responsibility to return to the dentist and to communicate the need for fluoride to the dentist. Dr. Nedzi, however, made no reference to the use of fluoride trays.
 

 Additionally, Dr. Troy Scroggins, Chairman of the Radiation Oncology Department at Ochsner Hospital in New Orleans and a member of the medical review panel, stated that prior to radiation treatment, he confirms that the patient is being seen by a dentist, and that the dentist is aware the patient is going to receive radiation. Additionally, Dr. Scroggins stated that he does not always speak to that dentist directly, nor does he think the standard of care requires a radiation oncologist to always call the dentist. Dr. Scroggins stated that he typically talks to the patient about fluoride trays, but that he does not call the dentist and tell him specifically that he wants fluoride trays. Further, though Dr. Scroggins stated that the standard of care was to recommend fluoride trays after radiation treatment, he |nalso stated that he defers to the dentist on how to treat dry mouth, and he does not overrule any decision made by the dentist regarding the treatment.
 

 Dr. Gould, though the defendant in this matter, was also qualified as an expert in radiation oncology and testified that he always recommends that the patient see his dentist. However, he disagreed that in this case, the standard of care required a pre-dental evaluation, because Mr. Knight’s teeth looked fine, he had no complaints, and the location of the lymphoma did not mandate such an evaluation. Further, Dr. Gould stated that there was nothing that Mr. Knight needed to do pre-radiation to protect his teeth, particularly given the low dose of radiation and the fact that the fields of radiation excluded his teeth. Dr. Gould stated that prior to the radiation treatment, he met with Mr. Knight and discussed the risks and complications of radiation therapy as detailed on the consent form. Specifically, he discussed the need for fluoride use, told Mr. Knight to keep his teeth clean, brush his teeth, and see his dentist for fluoride treatment. During this meeting, Mr. Knight signed the consent form, informed Dr. Gould that he was treating with Dr. Babin, and said that Dr. Babin was aware of the radiation treatment and knew about fluoride.
 

 
 *164
 
 Dr. Gould further stated that post-therapy evaluation with a dentist is fine. According to Dr. Gould, the standard of care is to make sure that when the patient complains of dry mouth, he is being seen by a dentist. It is not necessary for the radiation oncologist to communicate with the dentist, or for him to tell the dentist to use fluoride trays. Rather, use of fluoride trays is within the dentist’s purview, because it is the dentist who manages the patient’s teeth.
 

 The plaintiffs assert on appeal that Dr. Gould judicially admitted that the standard of care of a radiation oncologist is to ensure the use of fluoride trays to treat a patient with dry mouth. Louisiana Civil Code article 1853 provides, in pertinent part, that “[a] judicial confession is a declaration made by a party in a | judicial proceeding ... [tjhat constitutes full proof against the party who made it.” To constitute a judicial confession, the statement must be the express acknowledgement of an adverse fact, the effect of which is to waive evidence as to the subject matter of the admission, or to withdraw the matter from issue.
 
 State Department of Transportation and Development v. Restructure Partners, L.L.C.,
 
 07-1745, p. 21 (La.App. 1st Cir.3/26/08), 985 So.2d 212, 229,
 
 unit denied,
 
 08-1269 (La.9/19/08), 992 So.2d 937.
 

 After reviewing Dr. Gould’s testimony in its entirety, it is clear that he acknowledged the importance of the use of fluoride and fluoride carriers or trays. However, to say that he judicially admitted that the standard of care of a radiation oncologist is to ensure the use of fluoride trays is misleading. Dr. Gould specifically disagreed that it is the obligation of the radiation oncologist to see to it that a prescription fluoride rinse or gel used with carriers or trays made at the time of evaluation is to be used by the patient for the remainder of his or her life. Rather, he stated that it is the dentist who does that. Further, when asked if he did anything to see that fluoride trays were used, he stated that Mr. Knight saw his dentist and began fluoride treatment two weeks after completion of the radiation treatment, and that it is the dentist’s purview to manage the patient’s teeth. Therefore, read in context, Dr. Gould clearly did not make an express acknowledgement of an adverse fact, as argued by the plaintiffs.
 

 Finally, in addition to the testimony of the five radiation oncology experts, the testimony of two oral and maxillofacial surgeons was also presented at trial. Particularly, Dr. Randall Wilk, who, after reviewing the excerpt from the radiation oncology textbook relied upon by Dr. Heysek in forming his opinion that the standard of care mandates the use of fluoride trays, stated that the textbook speaks of the use of fluoride rinse
 
 or
 
 gel, and that
 
 only
 
 the gel can be used in carriers or trays.
 

 | nTherefore, based on our review of the entire record, we find that the jury was clearly presented with conflicting testimony as to the standard of care under these circumstances and apparently chose to give more weight to the defendant’s experts. Given the discretion afforded to the jury in making such a determination, and because the jury’s finding that the plaintiffs failed to prove the applicable standard of care is reasonably supported by the record, we find no manifest error.
 

 Further, based on our determination of this issue, we likewise find no manifest error in the trial court’s judgment denying the plaintiffs’ motion for JNOV.
 
 See Belle Pass Terminal, Inc. v. Jolin, Inc.,
 
 92-1544, 92-1545, pp. 41-42 (La.App. 1st Cir.3/11/94), 634 So.2d 466, 491-492,
 
 unit denied,
 
 94-0906 (La.6/17/94), 638 So.2d 1094.
 

 
 *165
 
 CONCLUSION
 

 For the foregoing reasons, we affirm the judgments of the trial court, dismissing the plaintiffs’ claims against Raymond Clay Gould, M.D. with prejudice and denying plaintiffs’ motion for judgment notwithstanding the verdict. All costs of this appeal are assessed to the plaintiffs, Car-mel Knight, Cynthia Knight Thibodaux, and Dwayne Paul Knight.
 

 AFFIRMED.
 

 [1]
 

 . Originally, Cannel Knight wife of/and Philip Knight were the named plaintiffs in the instant action. However, following Philip Knight’s death on February 22, 2009, his two. adult children, Cynthia Knight Thibodaux and Wayne Paul Knight, along with Cannel, were substituted as plaintiffs for Philip Knight.